# IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

JUSTIN X. HALE,

  *Plaintiff,*

V.

JAMIE MCGREGOR, AND
USA RUGBY,

  *Defendants.*

§
§
§
§
§
§
§
§
§
§
§
§

CASE NO. 1:24-cv-01076-RP

## JAMIE MCGREGOR'S MOTION TO DISMISS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)

TO THE HONORABLE UNITED STATES DISTRICT COURT:

COME NOW, Defendant, JAMIE MCGREGOR ("McGregor"), who files this Motion to Dismiss ("Motion"), pursuant to FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6), Plaintiff, JUSTIN X. HALE's ("Plaintiff") First Amended Complaint, based on deficiencies in Plaintiff's live pleading.

## INTRODUCTION

Plaintiff's First Amended Complaint does not comply with the pleading requirements of FEDERAL RULE OF CIVIL PROCEDURE 8(a). Each of Plaintiff's alleged causes of action require Plaintiff to allege with specificity the individual actions raised against each defendant. Plaintiff's causes of action fail this standard because they lump every action by McGregor as an employee and USA Rugby ("USAR") together indiscriminately. Such impermissible lumping of individuals, employees and employers makes it impossible for this Court to render any specific ruling with respect to the independent claims for relief sought by Plaintiff. For these reasons, McGregor's Motion should be granted.

<u>**ARGUMENTS AND AUTHORITIES**</u>

**A.     <u>Dismissal of Plaintiff's Claims Against McGregor is Appropriate under FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)</u>**

To survive a motion to dismiss under FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6), a complaint must contain sufficient factual statements that, if taken to be true, "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). To meet this standard under FEDERAL RULE OF CIVIL PROCEDURE 8(a), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." The United States Supreme Court determined that this "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation" and that a "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. 544, 555 (2007)). As shown in further detail *infra.*, Plaintiff's rote recitation of claim elements or vague conclusory statements against McGregor as an employee of USAR meets this standard for dismissal.

**B.     <u>Plaintiff Improperly Pled Tortious Interference Against McGregor</u>**

In Paragraph 34 of the Amended Complaint, Plaintiff alleges that McGregor individually but "acting on behalf of and at the direction of USA Rugby" committed actions constitution tortious interference, but fails to provide specific claims as to McGregor's alleged individual tortious conduct.[1] The Fifth Circuit applies Texas law to bring a tortious interference claim, writing that "[u]nder Texas law, the elements of tortious interference with a contract are: (1) the existence of a contract, (2) willful and intentional interference, (3) interference that proximately

---

[1] *Id.*

caused damages, and (4) actual damages or loss." *Mumfrey v. CVS Pharmacy*, Inc., 719 F.3d 392, 402 (5th Cir. 2004).

As an initial matter, Plaintiff fails to identify the existence of any specific contract under which he brings this claim. At most, Plaintiff alludes to unidentified "valid contracts and business expectations with various rugby organizations […] for officiating assignments." As is required under the current law for Plaintiff to pursue a valid claim for tortious interference, Plaintiff fails to identify any specific contract that was previously signed and was in the process of being fulfilled.

Next Plaintiff must show that McGregor himself willfully and intentionally interfered with these "unspecified contracts". Again, to do so, the Fifth Circuit requires that "[t]o maintain a tortious interference suit against a corporate agent or representative, a plaintiff must show that the agent acted willfully and intentionally to serve <u>the agent's</u> personal interests at the corporation's expense." *Mumfrey*, 719 F.3d at 402 (5th Cir. 2004) (emphasis added). Plaintiff only claims that McGregor was "acting on behalf of and as the director of USA Rugby"[2], and does not identify any personal interest McGregor's alleged conduct provided him at USAR's expense. Further, Plaintiff at all times alleges Defendants worked in coordinated conspiracy with each other, and so Plaintiff's Complaint on its face clearly precludes him from maintaining a claim against McGregor, as there could be no benefit received by McGregor from the alleged tortious interference that came at USAR's expense.

Therefore, Plaintiff has not, and cannot, properly plead a claim of tortious interference against McGregor.

**C.     Plaintiff Improperly Pled Retaliation Against McGregor**

**1.     Plaintiff Was Never an Employee**

---

[2] *See* Plaintiff's First Amend. Pet., ¶ 34(c).

Plaintiff fails in his pleadings, as he makes no attempt to clarify under what law he intends to plead a retaliation claim.[3] However, even arguendo that Plaintiff were to allege retaliation under 42 U.S.C. § 1981, Title VII, or the TEXAS LABOR CODE, Plaintiff must specifically plead the same elements: (1) that an employee engaged in an activity protected by whichever statute the claim is brought under; (2) that an adverse employment action occurred; and (3) that a causal link existed between the protected activity and the adverse employment action. *See Gorman v. Verizon Wireless Tex., L.L.C.*, 753 F.3d 165, 170 (5th Cir. 2014) (Texas Labor Code and Title VII retaliation); *Davis v. Dallas Area Rapid Transit*, 383 F.3d 309, 319 (5th Cir. 2004) (Section 1981 and Title VII retaliation).

As an obvious requirement to pleading each of these elements, Plaintiff must claim to be at least one of defendant's employees. However, he does not. Plaintiff makes no claim to have been an employee of McGregor.[4]  In fact, Plaintiff does not claim to be an employee of USAR, explaining instead that he was intermittently contracted with by different groups for different events as a 1099 independent contractor.[5] The Fifth Circuit has repeatedly held that an independent contractor does not have standing to bring a retaliation claim merely for not getting their contract renewed. *Duran v. City of Corpus Christi*, 240 F. App'x 639, 643 (5th Cir. 2007); *see also Broussard v. L.H. Bossier, Inc.*, 789 F.2d 1158, 1160 (5th Cir. 1986) ("[i]ndependent contractors lack the employee-employer relationship required by Title VII claims.") Therefore Plaintiff has no standing to bring any kind of retaliation claim against McGregor.

---

[3] *Id*. at. ¶ 35.
[4] *See* Plaintiff's First Amend. Pet., ¶ 35.
[5] *Id*. at 12.

### 2. **<u>Plaintiff Was Not Engaged in a Protected Activity</u>**

As explained *supra*. Plaintiff does not identify under what statute he intended to bring a retaliation claim, and as a natural consequence of this, it is difficult to determine what statutorily protected activity against which he alleges this retaliation. The most Plaintiff says is that his protected activity was "participation in the Collegiate Rugby Championships"[6], which, if one reaches far enough, could potentially be a claim for protection for First Amendment freedom of association. However, the Texas District Courts have rejected that this can be the basis of retaliation claim against a private employer, explaining that "[t]he protections of the First and Fifth Amendment do not extend to private conduct, only to government action." *Carter v. Transp. Workers Union of Am. Loc. 556*, 353 F. Supp. 3d 556, 574 (N.D. Tex. 2019); *see also Nat'l Collegiate Athletic Ass'n v. Tarkanian*, 488 U.S. 179, 191 (1988) ("[a]s a general matter the protections of the Fourteenth Amendment do not extend to 'private conduct abridging individual rights.'") (quoting *Burton v. Wilmington Parking Authority*, 365 U.S. 715, 722 (1961)). Federal courts have been clear that no actions by NGBs, such as USAR, are to be construed as anything but private conduct. *San Francisco Arts & Athletics, Inc. v. U.S. Olympic Committee*, 483 U.S. 522, 544-45 (1987) ("Neither the conduct nor the coordination of amateur sports has been a traditional governmental function.")

Even if Plaintiff had been an employee of McGregor, Plaintiff does not allege anything that rises to the level of protected conduct as the basis of his retaliation claim. Therefore, this claim against McGregor is properly dismissed.

---

[6] *Id.* at 35(a).

**D.      Plaintiff's Improperly Plead Defamation Against McGregor**

Plaintiff alleges Defamation by McGregor in his First Amended Complaint[7], but fails to plead any of the elements of the claim with sufficient specificity. As other district courts have explained, "to maintain a defamation claim [in Texas district courts], the plaintiff must plead facts that show the defendant: (1) published 'a false statement of fact to a third party, (2) that was defamatory concerning the plaintiff, (3) with the requisite degree of fault, and (4) damages, in some cases.'" *Parker v. Spotify, USA, Inc.*, 569 F.Supp 519, 528 (W.D. Tex. 2021) (quoting *In re Lipsky*, 460 S.W.3d 579, 593 (Tex. 2015)).

Plaintiff fails to plead his claim of defamation with anywhere near the specificity required to maintain a defamation claim. As other Texas district courts have explained, "[w]hile a claim for defamation is not subject to the heightened pleading requirements of Rule 9(b), the pleadings for a defamation claim must be sufficiently detailed to the extent necessary to enable the defendant to respond." *Encompass Office Sols., Inc. v. Ingenix, Inc.*, 775 F.Supp.2d 938, 958 (E.D. Tex. 2011).

The only indication Plaintiff makes in his Amended Complaint as to *what* statements he believes McGregor made, was to write that McGregor "made malicious and false statements about Plaintiff, Justin X. Hale, regarding his participation in rugby events and his qualifications."[8] This is entirely insufficient. "To show that a defamatory statement is 'about' or 'concerning' the plaintiff, the plaintiff must show that the statement 'referred to the plaintiff' and 'sufficiently identif[ied]' the plaintiff." *Petty v. Portofino Council of Coowners, Inc.*, 702 F. Supp. 2d 721, 732 (S.D. Tex. 2010) (quoting *Henriquez v. Cemex Mgmt., Inc.*, 177 S.W.3d 241, 252 (Tex. App. – Houston [1st Dist.] 2005, pet. denied). At the very least a plaintiff is required to include in their pleadings "exactly when, where and to whom the statements were published". *Teel v. Deloitte &*

---

[7] At ¶ 36.
[8] Plaintiff's First Amended Complaint, at ¶ 37.

*Touche LLP*, 2015 WL 9478187, at \*6 (N.D. Tex. Dec. 29, 2015). Plaintiff fails to specify what statements were made that he believes to be factually false, let alone when, where, or to which specific individuals they were allegedly made.

Because Plaintiff failed to plead defamation by McGregor with anywhere near the bare minimum required specificity, this claim must be dismissed.

### E.     <u>Plaintiff's Improperly Plead Breach of Contract Against McGregor</u>

#### 1.     Claim is Factually Vague

Plaintiff alleges that McGregor committed a breach of contract against him in his First Amended Complaint[9], but once again, fails to plead the minimum required facts to support this claim. The Fifth Circuit requires that when bringing a breach of contract action under Texas law, a Plaintiff must plead "(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract **by the defendant**, and (4) damages sustained by the plaintiff as a result of the breach." *Certain Underwriters at Lloy's of London v. Lowen Valley View, LLC*, 892 F.3d 167, 170 (5th Cir. 2018) (emphasis added). Applying this, district courts have specified that a complaint, "must assert enough facts that make it plausible that a contract existed between the parties, [plaintiff] fully performed, the contract was breached, and [that plaintiff] has been harmed." *Provision Grp., Inc. v. Crown Toxicology, Ltd.*, 2017 WL 11221433, at \*3 (W.D. Tex. Oct. 19, 2017).

Plaintiff entirely fails these pleading requirements. Plaintiff vaguely alleges he had contracts with "rugby organizations" that had "clear terms" that he fulfilled, and that McGregor interfered with these mysterious contracts by "communicating misleading information and unjustly disqualifying Plaintiff's from rugby events."[10] This is entirely insufficient to allow for

---

[9] At ¶ 36.

[10] Plaintiff's First Amended Complaint, at ¶ 37(a-c) (*sic.*).

response by McGregor. As the Texas Western District Court has explained, a Complaint "must assert enough facts that make it plausible that a contract existed between the parties, [plaintiff] fully performed, the contract was breached, and [plaintiff] has been harmed." It is not clear from Plaintiff's pleadings to what contracts he is referring, whether he actually fully performed any of them, and what breaches he alleges to have occurred. Because Plaintiff has done nothing, except to improperly and vaguely allege the elements of a breach of contract claim without sufficient specificity to allow McGregor to respond, Plaintiff's claim should be dismissed.

### 2. McGregor is Not a Party to a Contract.

One of the few things that actually can be ascertained from Plaintiff's First Amended Complaint is that McGregor is not a party, nor does he have anything to do with, any of the contracts that Plaintiff alleges are the basis for his breach of contract claim. Plaintiff identifies McGregor as responsible for his breach of contract claims because he was "acting on behalf of and at the direction of USA Rugby".[11] Plaintiff then alleges his valid contracts were with "rugby organizations, including Major League Rugby (MLR) and Collegiate Rugby Championships (CRCs)". Even construing all of Plaintiff's vaguely formed allegations as true, he makes no claim that McGregor, let alone USA Rugby, were a party of any contract with him.

Case law is clear on this point. "In Texas, privity of contract is an essential element for recovery in an action based on a contractual theory. A suit for breach of contract may not be maintained against a person who is not a party to a contract." *Note Inv. Grp., Inc. v. Assocs. First Cap. Corp.*, 2013 WL 11330534, at *2 (E.D. Tex. May 23, 2013). Plaintiff gives no indication that McGregor was ever a party to any contract with Plaintiff, and so there is no basis for his breach of contract claim against McGregor, and it must be dismissed.

---

[11] *Id*. at ¶ 37.

**F.** <u>**Plaintiff's Improperly Plead Violations of the TED STEVENS ACT by McGregor:**</u>

Plaintiff alleges that McGregor committed violations of the TED STEVENS ACT (also known alternatively as the AMATEUR SPORTS ACT, ASA, or just as 36 U.S.C.A. § 220501 - 220529), but all he suggests in his pleading is that McGregor interfered "with the sanctioning and participating of rugby events", without actually stating how this would constitute a TED STEVENS ACT violation.[12] However, even if properly pled, Plaintiff may not bring such a claim under the TED STEVENS ACT.

**1.   No Private Right of Action Under the Ted Stevens Act**

When it was created, the TED STEVENS ACT was "enacted to correct the disorganization and serious factional disputes that seemed to plague amateur sports in the United States." *San Francisco Arts & Athletics*, 483 U.S. 522, 544 (1987). To that end, the TED STEVENS ACT grants those amateur sport organizations that qualified as national governing bodies ("NGBs"), per the requirements of 36 U.S.C.A. § 220504, such as USA Rugby for the national oversight, of course, amateur rugby, with great authority and responsibility. As other district courts have explained, "[a]lthough an NGB is a private actor, the monolithic control exerted by an NGB over its amateur sport is a direct result of the congressional intent expressed in the AMATEUR SPORTS ACT." *Behagen v. Amateur Basketball Ass'n of U.S.*, 884 F.2d 524, 528 (10th Cir. 1989).

As part of the monolithic power imparted to NGBs, such as USA Rugby, by the TED STEVENS ACT is 36 § 220505(c)(5), which provides that such national organizations may:

> Facilitate, through orderly and effective administrative procedures, the resolution of conflicts or disputes that involve any of its member and any amateur athlete, coach, trainer, manager, administrator, official, national governing body, or amateur sports organization and that arise in connection with their eligibility for and participation in the Olympic Games, the Paralympic Games, the Pan-American Games, the Parapan American Games, world championship competition, the Pan-

---

[12] Plaintiff's First Amended Complaint, at ¶ 38(a).

American world championship competition, or other protected competition as defined in the constitution and bylaws of the corporation.

Because of the above, the ACT expressly provides that "neither this paragraph nor any other provision of this chapter shall create a private right of action under this chapter." 36 U.S.C. § 220505(b)(9). This provision has been repeatedly reviewed and upheld by appeals courts. *See e.g. Doe v. United States Ctr. For SafeSport, Inc.*, 2024 WL 3924663, at *10 (W.D. Wash. Aug. 23, 2024) ("the Amateur Sports Act as a whole expressly does not authorize private rights of action."); *Pliuskaitis v. USA Swimming, Inc.*, 243 F.Supp.3d 1217, 112 (D. Utah 2017) aff'd sub nom. *Pliuskaitis v. USA Swimming*, 720 F.App'x 481 (10th Cir. 2018) ("Plaintiff's claims [regarding an NGB determining he was ineligible to coach for their events] are exactly the type that the Sports Act was designed to address through the rules and regulations set forth by the NGBs of each amateur sport."). For this reason alone, Plaintiff cannot bring a claim against McGregor for violations of the TED STEVENS ACT.

**2. Plaintiff Had Not Exhausted Required Administrative Remedies Prior to Filing Suit.**

Even if Plaintiff could establish that he had standing to bring a private claim against McGregor for a TED STEVENS ACT violation, his claim must be dismissed for failure to first exhaust the administrative remedies mandated under TED STEVENS. As an initial matter, Plaintiff fails to claim that McGregor, acting independent of his employee role with USA Rugby, committed a violation of a specific provision of the TED STEVENS ACT against Plaintiff.[13] *See Pliuskaitis v. USA Swimming, Inc.*, 243 F.Supp.3d 1217, 1226 (D. Utah 2017), aff'd sub nom. Pliuskaitis v. USA Swimming, 720 F.App'x 481 (10th Cir. 2018) ("Plaintiff asserts that USA Swimming breached its own rules in determining his eligibility to coach. However, Plaintiff provides only vague and

---

[13] Plaintiff's First Amended Complaint, at ¶ 38.

conclusory allegations regarding USA Swimming's alleged breach, which are not sufficient to establish this court's jurisdiction. Plaintiff has not set forth the specific rules that USA Swimming allegedly breached; rather, Plaintiff simply disagrees with USA Swimming's determination regarding his eligibility.")

The closest Plaintiff comes to meeting the bare minimum pleading requirement was to claim that McGregor was somehow "involved" in Plaintiff's "removal" as an official from events, and that this is somehow a violation of 36 U.S.C.A. § 220523 of the ACT.[14] In fact, these alleged action would be directly in line with the TED STEVENS ACT, as 36 U.S.C.A. § 220505(c)(5), o ne of the explicit purposes of the TED STEVENS ACT is,

> to facilitate, through orderly and effective administrative procedures, the resolutions of conflicts or disputes that involve any of its member and any amateur athlete, coach, trainer, manager, administrator, **official**, national governing body, or amateur sports organization and that arise in connection with their eligibility for and participation in […] other protected competition as defined in the constitution and bylaws of the corporation;

(emphasis added). The ACT specifically provides a detailed mechanism so that grievances and disputes against NGBs were to be resolved in order to fulfill this goal. *See* 36 U.S.C.A. § 220527. Because of this, courts have held for decades that "[t]he comprehensive provisions for arbitration, as well as the legislative history [of the TED STEVENS ACT], clearly demonstrate a congressional determination that disputes shall be resolved by arbitration."

Plaintiff has made no showing that he made any attempt to put forward or resolve his complaints against McGregor as an employee of USA Rugby prior to filing his suit. Because Plaintiff has failed to engage, let alone exhaust, the required administrative remedies required to dispute NGB decisions under the TED STEVENS ACT, this claim against McGregor on behalf of USA Rugby must be dismissed.

---

[14] *Id.* at ¶ 38(a).

**G.      Plaintiff's Improperly Plead Discriminatory Treatment Against McGregor**

Plaintiff alleges that McGregor committed acts constituting discriminatory treatment against him in his First Amended Complaint[15], but again fails to plead the minimum required facts for this claim. As a first issue, Plaintiff does not state under what statute or law he intends to bring a discrimination claim that would allow McGregor to directly respond.[16] Regardless, there is no law under which Plaintiff's pleadings entitle him to bring a discrimination claim.

Plaintiff cannot bring discrimination claims under Title VII or TCHRA. As Plaintiff himself pleads "Hale is a 1099 independent contractor".[17] It has long been held by Texas district courts that "an independent contract [that] did not have an employment relationship […] lacks standing to bring Title VII discrimination and retaliation claims', and that "[b]ecause [plaintiff] did not have an employment relationship with [defendant], [plaintiff] does not have standing to bring discrimination and retaliation claims under TCHRA. *White Glove Staffing, Inc. v. Methodist Hosps. of Dallas*, 2017 WL 3925328, at *2-3 (N.D. Tex. Sept. 7, 2017).

If Plaintiff intended to plead discrimination under Section 1981, he was required to show that "(1) he is a member of a racial minority; (2) the defendant had an intent to discriminate on the basis of race; and (3) the discrimination concerned one or more of the activities enumerated in the statute, such as the making and enforcing of a contract." *Bellows v. Amoco Oil Co.*, 118 F.3d 268, 274 (5th Cir. 1997). Specifically, a plaintiff asserting a Section 1981 claim must identify an existing or proposed contract that they want to make and enforce. *See Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 476 (2006).

---

[15] At ¶ 39.
[16] *Id*.
[17] *Id*. at 12.

Plaintiff fails to sufficiently plead discriminatory intent. The Fifth Circuit has adopted the rule that "'naked allegation[s]' of discriminatory intent are too conclusory to survive a motion to dismiss". *Body by Cook, Inc. v. State Farm Mut. Auto. Ins.*, 869 F.3d 381, 386 (5th Cir. 2017) (quoting *Albert v. Carovano*, 851 F.2d 561, 572 (2d Cir. 1988) (en banc)). The Fifth Circuit further ruled that "generalized allegations regarding Defendants'' alleged disparate treatment […] are not specific enough to plead discriminatory intent [when] [t]hey fail to identify […] specific instances when [Plaintiff] was refused a contract but a similarly situated non-minority […] was given a contract. *Id*. at 387 (citing *Hall v. Cont'l Airlines, Inc.*, 252 Fed.Appx. 650, 653-54 (5th Cir. 2007)(unpublished)). Similarly, Plaintiff fails to identify any specific contracts that any specifically identified other non-minority contractor referees were given by USA Rugby after it or McGregor learned they had refereed NCR events.[18]

Because Plaintiff fails to satisfy any known grounds for claiming discrimination against McGregor, his claim to such must be dismissed.

**H.** **Plaintiff Cannot Plead Intentional Infliction of Emotional Distress**

Plaintiff impermissibly attempts to duplicate his claims for relief and subsequent damages by pleading intentional infliction of emotional distress against McGregor.[19] However, Texas district courts have rejected a plaintiff's right to bring such a claim when it is essentially just a repetition of an interference with a contract claim, as Plaintiff does here. This is because, "[u]nder Texas law, 'intentional infliction of emotional distress is a 'gap-filler' tort never intended to supplant or duplicate existing statutory or common-law remedies.'" *Crisalli v. Willis Re Inc.*, 560 F. Supp. 2d 512, 514 (E.D. Tex. 2006) (quoting *Creditwatch, Inc. v. Jackson*, 157 S.W.3d 814, 816 (Tex.2005)). Put more explicitly, under Texas law "[w]here the gravamen of a plaintiff's

---

[18] Plaintiff's First Amended Complaint, at ¶ 39(c).
[19] Plaintiff's First Amended Complaint, at ¶ 40.

complaint is really another tort, intentional infliction of emotional distress should not be available."
*Hoffmann–LaRoche Inc. v. Zeltwanger*, 144 S.W.3d 438, 447 (Tex.2004).

In a similar case, a district court found that when the underlying conduct of the intentional infliction of emotional distress claim is the same as that of a tortious interference with an employment contract claim, with no additional facts, the gravamen defaults to just that of the tortious interference claim. *See Crisalli*, 560 F. Supp, at 514. That court further noted that "Texas law already recognized a claim for tortious interference with a contract, a claim which does not permit the recovery of mental anguish damages […] [plaintiff], therefore, may not bring a claim for the intentional infliction of emotional distress in an effort to circumvent the unavailability of mental anguish damages under his claim for tortious interference with a contract." *Id*. at 514-515 (citing Creditwatch, Inc. v. Jackson, 157 S.W.3d 814, 818 (Tex. 2005)).

Plaintiff's pleadings are clear that he is claiming intentional infliction of emotional distress against McGregor for allegedly "making malicious and false statements about Plaintiff's qualifications and participation in rugby events",[20] and that Plaintiff's tortious interference with a contract claim against McGregor is based on the defendant's allegedly "communicating malicious and misleading information about Hale's participation in events."[21] This goes far beyond the claims sharing a gravamen; they are very nearly "cut-and-pastes" of each other. Because of this, Plaintiff's claim against McGregor for intentional infliction of emotional distress must be dismissed.

---

[20] *Id*. at ¶ 40(a).
[21] Plaintiff's First Amended Complaint, at ¶ 34(c).

**I.** **Plaintiff Cannot Plead Disparate Treatment Based on Race**

Plaintiff attempts to make a claim against McGregor for disparate treatment based on race.[22] However, courts under the Fifth Circuit do not recognize treatment as its own independent cause of action. Instead, disparate treatment is a way of proving a § 1981 discrimination claim. As the Fifth Circuit recently explained at length "[to] succeed on a § 1981 claim, plaintiffs must show that '(1) they are members of a [protected class]; (2) [d]efendants intended to discriminate on the basis of [that protected class]; and (3) the discrimination concerned one or more of the activities enumerated in the statute.' Plaintiffs can **show** discrimination in two ways: disparate treatment and disparate impact." *Abdallah v. Mesa Air Grp., Inc.*, 83 F.4th 1006, 1013 (5th Cir. 2023) (quoting *Body by Cook, Inc. v State Farm Mut. Auto. Ins.*, 869 F.3d 381, 386 (5th Cir. 2017)). For all the reasons already discussed in Section G of this Motion, *supra.*, Plaintiff does not have a valid § 1981 discrimination claim against McGregor, and this section of Plaintiff's First Amended Complaint does not plead any new additional facts that would change that.

Therefore, to the extent it ever impermissibly existed, Plaintiff's claim for disparate treatment against McGregor must be dismissed.

## CONCLUSION AND PRAYER

Based on the foregoing, the Court should dismiss Plaintiff' claims against McGregor for Plaintiff's claims as to tortious interference, retaliation, defamation, breach of contract, violation of the TED STEVENS ACT, discriminatory treatment, intentional infliction of emotional distress, and disparate treatment based on race, and grant McGregor such other and further relief as to which he might be entitled to at law or equity.

Date: November 4, 2024                    Respectfully submitted,

---

[22] *Id*. at ¶ 41.

**GORDON REES SCULLY MANSUKHANI, LLP**

By: */s/ Philip Robert Brinson*
     Philip Robert Brinson
     State Bar No. 00787139
     TransWestern Tower
     1900 West Loop South, Suite 1000
     Houston, Texas 77027
     (713) 961-3366
     prbrinson@grsm.com

**GORDON REES SCULLY MANSUKHANI, LLP**

**ATTORNEY FOR DEFENDANTS,
JAMIE MCGREGOR, AND USA RUGBY**

## CERTIFICATE OF SERVICE

I certify that on November 4, 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, and mailed a copy of the foregoing to:

Justin X. Hale
107 Grapefruit Rd.
Hutto, TX 78634
(979) 703-0894
justinxhale@gmail.com

        */s/ Philip Robert Brinson*
        Philip Robert Brinson