**FILED**

January 07, 2025

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS

BY: _Christian Rodriguez_

DEPUTY

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE WESTERN DISTRICT OF TEXAS**

**AUSTIN DIVISION**

| | | |
|---|---|---|
| **JUSTIN X. HALE** | § | |
| *Plaintiff,* | § | |
| | § | |
| **V.** | § | **CASE NO. <u>1:2024cv01076</u>** |
| | § | |
| **JAMIE MCGREGOR, DIRECTOR OF** | § | |
| **TRAINING & EDUCATION USA RUGBY** | § | |
| **AND** | § | |
| **USA RUGBY** | § | |
| *Defendants.* | § | |

---

### RESPONSE IN OPPOSITION TO JAMIE MCGREGOR MOTION TO DISMISS

---

Comes now, Plaintiff Justin X. Hale ("Plaintiff"), *pro se*, and files this Motion in Opposition to

Defendant Jamie McGregor's ("McGregor") Motion to Dismiss, and in support thereof, states as

follows:

## I. INTRODUCTION

Plaintiff Justin X. Hale respectfully opposes Defendant Jamie McGregor's Motion to Dismiss

pursuant to Federal Rule of Civil Procedure 12(b)(6), which asserts that the Complaint fails to state a

claim upon which relief can be granted. This opposition is founded on detailed factual allegations that

demonstrate the Defendant's discriminatory and retaliatory actions, which have significantly and

adversely impacted Plaintiff's professional career as a rugby referee.

These actions, characterized by personal bias and a clear departure from established USA Rugby protocols, have not only compromised Plaintiff's professional opportunities but have also infringed upon his rights under 42 U.S.C. § 1981. This statute ensures equal protection and the security of rights under contracts, free from racial discrimination.

The Defendant's conduct, including intentional misrepresentations and threats to Plaintiff's career opportunities, lacked any legitimate foundation or adherence to written USA Rugby policies. Such conduct highlights unlawful interference with Plaintiff's contractual and professional relationships.

Given the substantial allegations and the evidence supporting them, this Court should deny the Motion to Dismiss to enable a thorough factual exploration through discovery. This process is crucial to address the Plaintiff's grievances and to ensure he receives appropriate remedies for the harms suffered due to the Defendant's actions.

## II. FACTUAL BACKGROUND

Plaintiff Justin X. Hale, a distinguished rugby referee with extensive experience, has consistently demonstrated his commitment and skill in officiating at various competitive levels. His career, however, has been adversely impacted by discriminatory actions that have denied him equal opportunities under the law, orchestrated by Defendant Jamie McGregor, Director of Training & Education at USA Rugby.

**A. Initial Disqualification from CRAA 7s Championship**

On April 26, 2023, Plaintiff was confirmed by Nick Ricono, USA Rugby 7s Referee Manager, to officiate at the prestigious CRAA 7s Championship. The confirmation was welcomed and acknowledged through an official email stating appreciation for Plaintiff's acceptance and participation (Exhibit A). However, this opportunity was abruptly rescinded. On May 1, 2023, mere days before the event, Defendant McGregor informed Plaintiff of his disqualification during a phone call, citing Plaintiff's prior involvement in events organized by the National Collegiate Rugby (NCR), a competing rugby organization.

This exclusion was based on an alleged but undocumented agreement between CRAA and USA Rugby, which Plaintiff had never been made aware of. McGregor's refusal to provide written proof of this agreement or clear guidelines for reinstatement, coupled with threats of further exclusion from USA Rugby events, exemplifies a clear abuse of power and discriminatory practice. This act severely damaged Plaintiff's professional reputation and resulted in substantial financial losses.

**B. Continued Pattern of Discriminatory Actions**

The exclusion from the CRAA 7s Championship represents a component of a broader, systematic pattern of discrimination perpetuated by Defendant McGregor. This pattern manifests in consistent barriers placed against Plaintiff's opportunities to officiate in Major League Rugby (MLR) and other prestigious rugby events. Notably, these barriers are recurrently attributed to Plaintiff's associations with NCR events, despite the lack of any explicit policy that precludes such involvement.

This discriminatory pattern is further exemplified by the treatment of white referees who also participated in similar NCR events but did not experience comparable punitive measures. Contrarily, these referees were permitted to continue their officiating roles without impediment and were subsequently promoted within USA Rugby's ranks, thus underscoring a clear bias that disproportionately disadvantages Plaintiff.

## C. Impact on Plaintiff's Career and Well-being

The continuous and discriminatory interferences by McGregor have not only stymied Plaintiff's career progression but have also inflicted substantial emotional distress. The arbitrary and baseless nature of these exclusions, coupled with an apparent racial bias, has cultivated an environment rife with uncertainty and hostility, adversely affecting Plaintiff's mental health and professional reputation.

Such targeted discriminatory actions have marginalized Plaintiff within the rugby community, impeded his career development, and placed him at an unwarranted professional disadvantage. The resulting isolation and the blatant disparity in treatment have significant ramifications, impacting Plaintiff's ability to secure future officiating opportunities and causing profound personal and professional harm.

## III. ARGUMENTS

### A. Plaintiff's Agreements Within USA Rugby

Defendant McGregor's assertion that no valid contracts existed between Plaintiff and various rugby organizations not only ignores established practices within USA Rugby but also overlooks the discriminatory influences that have shaped these interactions. It is a recognized norm within USA Rugby to rely on email communications and verbal commitments for confirming referee assignments, which historically establish contractual obligations. The email from Nick Ricono on April 26, confirming Plaintiff's assignment, is representative of such standard operational procedures. *Exhibit A.*

Despite this norm, Defendant McGregor has selectively invoked an alleged policy that disqualifies participation in events not directly under USA Rugby's control. This policy has been applied inconsistently and with a clear discriminatory intent towards Plaintiff, who belongs to a protected racial class. Evidence of this selective enforcement is apparent in the differential treatment of white referees who participated in identical NCR events but encountered no punitive measures. Unlike Plaintiff, these referees continued to receive assignments and were even promoted within USA Rugby, indicating that the disparity in treatment was based on racial discrimination rather than merit or qualifications.

Such discriminatory practices not only violate federal and state non-discrimination laws but also contravene SafeSport regulations, which require a sporting environment free from discrimination. Additionally, McGregor's evasive behavior during crucial communications, his failure to provide written justifications for his decisions, and his refusal to offer future opportunities even if Plaintiff

adhered to his arbitrary demands, all reflect actions motivated by personal bias rather than legitimate organizational policy.

These actions have breached the implied contractual agreements and inflicted significant professional and emotional harm on Plaintiff, demonstrating a blatant disregard for equal treatment under the law. The detrimental reliance by Plaintiff on these agreements, where he declined other officiating opportunities and incurred expenses in preparation for the events, underscores the existence and enforceability of these contracts. The failure to honor these commitments, based on discriminatorily applied and undocumented policies, calls for judicial intervention to address and rectify the ongoing violations of Plaintiff's rights and to challenge the discriminatory practices entrenched within USA Rugby.

**B. Tortious Interference With Existing Contracts**

Plaintiff Justin X. Hale alleges that Defendant Jamie McGregor's actions constitute tortious interference with existing contractual relations and prospective economic advantages. McGregor's conduct has not only tarnished Plaintiff's professional reputation but has also led to substantial financial losses and hindered career progression. These actions were carried out without any valid or legally justified reason, leveraging McGregor's position at USA Rugby to orchestrate unwarranted exclusions and disqualifications of Plaintiff from refereeing opportunities, thus severely impairing Plaintiff's ability to fulfill contractual commitments and pursue professional advancement.

The pattern of interference initiated with an unwarranted exclusion from the CRAA 7s Championship. McGregor cited Plaintiff's participation in events organized by National Collegiate

Rugby (NCR)—a separate entity not governed by USA Rugby—as grounds for disqualification. This action was executed in the absence of any formal policy that prohibited such participation, underscoring McGregor's arbitrary exercise of power. Subsequent communications and decisions by McGregor have consistently demonstrated an intent to disrupt Plaintiff's contractual and business relationships, including direct interventions resulting in Plaintiff's exclusion from Major League Rugby (MLR) matches and other prominent refereeing opportunities.

Furthermore, USA Rugby's partial funding of the MLR Referee Manager's contract enabled McGregor, as a representative of USA Rugby, to exercise significant influence over MLR referee appointments. This financial connection underscores McGregor's capacity to interfere with Plaintiff's professional opportunities and supports the allegation that his actions directly impacted Plaintiff's contracts and business relationships.

Moreover, as evidenced through communications from David Wilkinson, Director of Match Officials for MLR, Plaintiff was informed he could not be appointed to officiate until he resolved unspecified issues with McGregor. This directive was vague and unsupported by any formal grievance or procedural documentation, highlighting not only the interference but also the lack of due process in McGregor's actions.

Additionally, the consistent advancement of white referees who participated in identical or similar NCR events, without facing similar repercussions, further evidences discriminatory application of alleged policies. This differential treatment not only underlines the interference but also suggests a deeper, systemic bias in the enforcement of non-existent or selectively applied rules.

In conclusion, these actions by Defendant McGregor have not only interfered with Plaintiff's existing professional contracts and anticipated economic opportunities but have also positioned McGregor's behavior within the framework of discriminatory practices, rendering them not merely wrongful but malicious and without justification. The significant damages resulting from these actions merit redress through this Court, emphasizing the need for a comprehensive judicial review to rectify the ongoing violations of Plaintiff's rights and address the discriminatory practices within USA Rugby.

## C. Retaliation Under 42 U.S.C. § 1981

Plaintiff Justin X. Hale reasserts and expands upon his claim for retaliation under 42 U.S.C. § 1981, presenting further evidence of discriminatory practices by Defendant Jamie McGregor. This evidence illustrates the racially biased application of policies specifically against Plaintiff, a Black referee, in stark contrast to white referees who engaged in similar professional activities without repercussion.

In addition to his authority within USA Rugby, McGregor's influence extended to MLR assignments due to USA Rugby's partial funding of the MLR Referee Manager's contract. This financial arrangement gave McGregor leverage in excluding Plaintiff from MLR events, further demonstrating his retaliatory power over Plaintiff's professional opportunities.

Protected Activity: Plaintiff participated in protected activity by officiating at the Collegiate Rugby Championships (CRCs), events sanctioned by National Collegiate Rugby (NCR), an entity

independent of USA Rugby. Participation in such events aligns with promoting sporting fairness and integrity, which are protected under anti-discrimination laws.

Adverse Action: Defendant McGregor's adverse actions included barring Plaintiff from USA Rugby-sanctioned events and obstructing his opportunities within professional rugby circuits, notably Major League Rugby (MLR). These actions are substantiated by documented communications in which McGregor explicitly links Plaintiff's exclusion to his participation in NCR events—a treatment not accorded to his white counterparts.

Causal Connection: The causal link between Plaintiff's protected activity and the adverse actions taken by McGregor is evident from the immediate and consequential barriers imposed on Plaintiff's career shortly after his involvement in NCR events. The timing of these retaliatory measures is illustrated by recorded conversations where McGregor explicitly expressed discontent with Plaintiff's participation, indicating a direct retaliatory motive.

Evidence of Discriminatory Treatment: A stark disparity in treatment becomes apparent when comparing Plaintiff's experiences with those of white referees, who participated in identical NCR events yet faced no similar sanctions or career obstacles. For instance, shortly after officiating at the same NCR events as Plaintiff, these referees were appointed to prominent roles within MLR, exemplifying a clear discriminatory double standard based on race.

Intimidation and Coercion: McGregor's actions extended beyond mere retaliation, veering into intimidation and coercion, as he used threats of career repercussions to deter Plaintiff from

engaging in further NCR-affiliated matches. These coercive tactics aimed to silence and penalize Plaintiff for his association with NCR, leveraging the fear of professional ostracism to enforce compliance with racially biased directives.

Given the detailed evidence of racially biased retaliation and the clear differential treatment between Plaintiff and similarly situated white referees, there is a compelling need for this Court to apply the full scope of 42 U.S.C. § 1981 in redressing the violations against Plaintiff. The consistent pattern of behavior exhibited by McGregor not only infringes upon Plaintiff's rights under the statute but also underscores systemic issues within USA Rugby that necessitate judicial intervention.

**D. Intentional Infliction of Emotional Distress**

Plaintiff alleges that Defendant Jamie McGregor's conduct satisfies the criteria for intentional infliction of emotional distress, characterized by actions that were:

Extreme and Outrageous: McGregor's behavior grossly deviated from the standards of decency expected in a professional setting. This is exemplified by his arbitrary disqualifications of Plaintiff from rugby events, baseless accusations regarding Plaintiff's professional conduct, and the use of coercive tactics to manipulate Plaintiff's career opportunities. Such actions are not only unprofessional but shockingly egregious, clearly exceeding the bounds of acceptable workplace behavior.

Intentional or Reckless: McGregor executed his actions with a clear intent to inflict harm or, at the very least, with reckless disregard for the potential impact of his conduct. His deliberate dissemination of false information to rugby organizations concerning Plaintiff's involvement in

sanctioned events underlines his malicious intent. This indicates a purposeful effort to undermine Plaintiff's reputation and professional standing within the rugby community.

Severe Emotional Distress: As a direct result of McGregor's conduct, Plaintiff has endured significant emotional distress manifested as anxiety, depression, sleep disturbances, and reputational harm. This severe distress has permeated Plaintiff's daily activities and interpersonal relationships, leading to profound feelings of humiliation and frustration. The psychological impact of these experiences has been debilitating, adversely affecting Plaintiff's mental health and overall well-being.

Causation: McGregor's outrageous conduct directly and proximately caused the emotional distress suffered by Plaintiff. The link between McGregor's actions and the emotional harm experienced by Plaintiff is evident through the immediate and severe effects following each incident of discriminatory or retaliatory behavior. The timing and nature of McGregor's actions, coupled with their severe consequences, clearly demonstrate a causal relationship between his conduct and the distress suffered by Plaintiff.

**E. McGregor's Individual Liability**

Defendant Jamie McGregor cannot shield himself from personal liability by claiming that his actions were solely in his capacity as an employee of USA Rugby. Under established legal principles, individual liability attaches when a person commits intentional torts, which in this case include tortious interference, retaliation, and intentional infliction of emotional distress.

McGregor's actions, which were deliberate and malicious, directly targeted Plaintiff, leading to significant professional and personal harm.McGregor's ability to exclude Plaintiff from both USA Rugby and MLR events was bolstered by USA Rugby's financial involvement in MLR referee management, giving him substantial control over Plaintiff's officiating assignments and career progression. This direct influence supports Plaintiff's claim that McGregor's actions caused significant harm and that he should be held individually liable.

The specificity and personal nature of the actions—direct communications with rugby organizations about Plaintiff, specific decisions to bar Plaintiff from events, and personal involvement in enforcing discriminatory practices—demonstrate that McGregor was not merely a passive participant but an active architect of the harm inflicted on Plaintiff.

The law clearly establishes that individuals can be held liable for harm resulting from intentional torts, regardless of their corporate or organizational affiliations. McGregor's conduct involved clear acts of malice and intent, which are actionable under civil tort law. These actions were not generic administrative acts but pointed decisions that significantly affected Plaintiff's career and well-being.

The direct consequence of McGregor's individually directed actions was substantial harm to Plaintiff, including lost career opportunities, emotional distress, and reputational damage. These outcomes are directly attributable to McGregor's personal decisions and actions, thus underscoring the appropriateness of individual liability.

In light of the foregoing, it is evident that McGregor's conduct falls squarely within the ambit of actions for which individual liability is both appropriate and necessary. By personally engaging in actions that led to significant damages for Plaintiff, McGregor's claim of acting solely within his professional role does not absolve him of responsibility. Therefore, this Court should recognize and enforce McGregor's individual liability for the intentional torts committed against Plaintiff.

**F. Plaintiff Has Established a Valid Claim for Retaliation**

Despite Defendant McGregor's contention that Plaintiff cannot state a claim for retaliation due to the absence of a formal employment relationship with USA Rugby, the realities of Plaintiff's professional engagements and the clear retaliatory nature of McGregor's actions establish a valid claim under 42 U.S.C. § 1981. McGregor's significant control over Plaintiff's officiating opportunities—acting as the gatekeeper for assignments to high-profile events like the CRAA Championship—effectively placed him in a position akin to an employer.

McGregor exploited this role to retaliate against Plaintiff for his participation in events hosted by NCR, as clearly evidenced during a phone call on March 15, 2024 (Exhibit B). In this call, McGregor articulated threats of excluding Plaintiff from future officiating opportunities should he continue to participate in NCR-sanctioned events. These threats and subsequent actions were not only punitive but also intended to coerce Plaintiff and other referees into exclusively supporting USA Rugby-sanctioned events, thereby stifling competition within the sport and unfairly limiting referees' professional opportunities.

The sequence of events further substantiates the causal connection between Plaintiff's protected activities and the retaliatory measures by McGregor:

1. Prior Incidents: Plaintiff had participated in NCR events, including nationally streamed and televised events, without repercussions from USA Rugby.

2. Retaliatory Threat: On March 15, 2024, immediately following Plaintiff's acceptance to officiate at the CRAA Championship, McGregor informed Plaintiff of his disqualification from the event and made clear future opportunities would be jeopardized if Plaintiff continued his association with NCR events.

The timing and specificity of McGregor's threats and actions clearly demonstrate that Plaintiff's involvement in NCR events was the motivating factor behind his disqualification and further threats. Moreover, McGregor's influence over MLR assignments, supported by USA Rugby's partial funding of the MLR Referee Manager's contract, directly affected Plaintiff's ability to secure officiating opportunities. This financial connection underscores McGregor's ability to enforce his threats and carry out retaliatory actions that harmed Plaintiff's career. This pattern of behavior constitutes retaliation, actionable under 42 U.S.C. § 1981, and warrants judicial examination to address these violations and ensure equitable treatment within the professional rugby refereeing community.

**G. Futility of Exhausting Administrative Remedies**

Defendant argues that Plaintiff failed to exhaust administrative remedies before filing this lawsuit. However, Plaintiff made repeated good-faith attempts to resolve these issues internally within USA Rugby's administrative structure, but those efforts proved futile.

Plaintiff raised concerns about the unfair and potentially unlawful nature of McGregor's actions directly with McGregor himself, who, as Director of Training & Education at USA Rugby, held significant influence over officiating appointments. Plaintiff also voiced his concerns to other key individuals in USA Rugby's leadership circle, including Nick Ricono, Rosalind Anderson, Chair of the RLC Development Working Group, and David Wilkinson, who instructed Plaintiff to speak directly with McGregor. Despite these efforts, Plaintiff was consistently met with resistance, and McGregor's conduct was defended by those in leadership positions.

Additionally, Plaintiff participated in a video call with McGregor, mediated by Marquise Goodwin, in an attempt to reach a resolution. However, this process did not result in any meaningful resolution of Plaintiff's concerns. The repeated insistence by McGregor's leadership circle that McGregor's actions were appropriate rendered further pursuit of administrative remedies futile.

Under these circumstances, where the individuals involved in the grievance process were the same individuals responsible for the alleged misconduct, it is unreasonable to require further exhaustion of administrative remedies, particularly when the process is controlled by those alleged to have committed the wrongdoing.

Therefore, Plaintiff respectfully requests that the Court find that Plaintiff's efforts to address these issues internally were sufficient and that further exhaustion of administrative remedies is not required.

**H. Remaining Claims**

Should the court grant the Motion for Leave to file a Second Amended Complaint, Plaintiff is prepared to furnish detailed factual allegations and comprehensive legal arguments in support of each additional claim. This preparedness stems from a belief that the facts of this case robustly support these claims, and that their inclusion in an amended complaint would facilitate a more streamlined and focused litigation process.

Including these claims will not only allow the court to have a fuller understanding of the context and breadth of the issues at hand but will also enhance the efficiency of judicial proceedings by consolidating all pertinent allegations and arguments into a single, comprehensive document. This approach ensures that all claims are addressed thoroughly and with due consideration, aligning with judicial efficiency and the interests of justice.

Plaintiff is committed to providing a well-substantiated presentation of each claim, grounded in both fact and law, to aid the court in its deliberations and to ensure that all relevant aspects of the case are fully explored and adjudicated.

## IV. CONCLUSION

For the reasons detailed herein, Plaintiff respectfully requests that the Court deny Defendant Jamie McGregor's Motion to Dismiss in its entirety. As a *pro se* litigant, Plaintiff asks the Court to consider his self-represented status in evaluating his filings. Despite not having formal legal representation, Plaintiff has presented well-founded claims for tortious interference, retaliation under 42 U.S.C. § 1981, and intentional infliction of emotional distress. These claims are supported by robust factual allegations and are grounded in relevant legal precedents that clearly illustrate the actionable nature of Defendant's conduct.

Moreover, the complexity and covert nature of the alleged discriminatory and retaliatory actions undertaken by Defendant McGregor necessitate a thorough discovery process. It is essential to explore further and gather additional evidence to fully expose the extent of Defendant's misconduct and to substantiate the claims presented.

Therefore, Plaintiff urges this Court to permit the case to proceed to discovery and ultimately to trial, to ensure that all aspects of this matter are fairly and comprehensively addressed. Allowing the case to move forward on its merits will not only uphold the principles of justice but also provide the necessary legal scrutiny to uncover and remedy the alleged wrongs committed against Plaintiff.

Dated: January 7, 2025

Respectfully submitted,

*/s/ Justin X. Hale*
Justin X. Hale
2904 Sprouted Grain
Seguin, TX
(979) 703-0894

**<u>CERTIFICATE OF SERVICE</u>**

I certify that on  Jan 7, 2025 , I electronically filed the foregoing with the Clerk of the Court using the Electronic Submission For Pro Se Filers, and mailed a copy of the foregoing on  Jan 7, 2025  to:

Philip Robert Brinson
1900 West Loop South, Suite 1000
Houston, Texas 77027
prbrinson@grsm.com

*/s/ Justin X. Hale*
Justin X. Hale
2904 Sprouted Grain
Seguin, TX
(979) 703-0894
justinxhale@gmail.com

# EXHIBITS

## Exhibit A



College 7s Championships 🔸 Inbox ×

**Nick Ricono** <nricono@usa.rugby>    Apr 26, 2023, 5:18 PM

to jswatzell, HALEYEAGUIAR, ianseaton, jacobgonz74, fernando.garcia.valdes, jarrodford3, comalley0130, rachelhillref, juanpcali, gwjmacd, liz.j.mal, easonye2, me, blairmcclure9 ▾

Hi all, we're gearing up for College 7s coming up May 6 and 7. Congratulations and thank you all for accepting. It will be a great weekend filled with rugby of all shapes and sizes! We'll be having a coordination and training meeting next week on Tuesday May 2nd at 4pm PT (7pm ET). I'll send a zoom link shortly. We are preparing the ref info packet (RIP) now so that should be coming soon as well.

Please let me know if you have any problems in the leadup.

Looking forward to seeing everyone very soon!

All the best,
Nick Ricono
USA Rugby 7s Referee Manager