**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | § | |
|---|---|---|
| JUSTIN X. HALE, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | CASE NO. 1:24-cv-01076-RP |
| V. | § | |
| | § | |
| JAMIE MCGREGOR, AND | § | |
| USA RUGBY, | § | |
| | § | |
| *Defendants.* | § | |

**DEFENDANT USA RUGBY'S**
**REPLY TO PLAINTIFF'S RESPONSE IN OPPOSITION TO USA RUGBY'S MOTION**
**TO DISMISS**

TO THE HONORABLE UNITED STATES DISTRICT COURT:

COME NOW, Defendant, USA RUGBY ("USAR"), who files this Reply to Plaintiff,

JUSTIN X. HALE's ("Plaintiff") Response ("Response") [Doc. 14] in Opposition to USA Rugby

Motion to Dismiss ("Motion") [Doc. 7]. USAR's Reply and Motion are based on Plaintiff's failure

to state a claim, upon which relief can be granted, as authorized by FEDERAL RULE OF CIVIL

PROCEDURE 12(b)(6). In support of its Reply and Motion, USAR respectfully shows the Court, as

follows:

**ARGUMENTS AND AUTHORITIES**

**A.** **Plaintiff Cannot Raise New Arguments or Introduce Additional Evidence in his**
**Response**

As an initial matter, Plaintiff attempts to introduce new evidence, modify pleadings, and

raise new claims throughout his Response.[1] Plaintiff's efforts to shoehorn these additions into his

---

[1] [*see* Doc. 14 generally].

pleadings before receiving leave of this Court is impermissible, and cannot affect this Court's ruling on USAR's Motion.[2]

When evaluating a Rule 12(b)(6) motion, and the resulting responses and replies, "a court cannot look beyond the pleadings in deciding a 12(b)(6) motion." *Tipping v. Garland Cadillac*, 2022 WL 660193, at \*3 (N.D. Tex. Feb. 9, 2022), report and recommendation adopted, 2022 WL 658766 (N.D. Tex. Mar. 4, 2022) (citing *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999)). In fact, under FED. R. CIV. P. 12(d), "[i]f, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56 [and all] parties must be given a reasonable opportunity to present all the material that is pertinent to the motion."

For this reason, any additional facts or claims raised by Plaintiff in his Response, or at any other time in deciding on USAR's Motion, must be disregarded by this Court.

**B.  The TED STEVENS ACT Preempts Plaintiff's State Law Claims.**

In his Response, Plaintiff attempts to argue that his, "claims do not hinge on eligibility or participation rules established by USA Rugby", and that because of that the TED STEVENS ACT preemption does not apply to his claims.[3] This is a bold misrepresentation, and in fact a direct contradiction, of Plaintiff's Amended Complaint.[4] In his live pleadings Plaintiff states that he brings this case after "Hale was informed by phone that he had been disqualified from participating as a referee".[5] Plaintiff then goes on to make such statements as, "[t]his interference included unjustly disqualifying Hale,"[6] "USA Rugby, took adverse actions against Plaintiff by disqualifying

---

[2] [Doc. 6].
[3] [Doc. 14, pg. 5].
[4] [Doc. 3].
[5] *Id.* at ¶ 17.
[6] *Id.* at ¶ 34(c).

him from participating in USA Rugby events,"[7] and "USA Rugby, acted beyond his statutory authority by unilaterally interfering with the sanctioning and participation of rugby events."[8] This is merely a sampling of the instances where Plaintiff makes clear in his pleadings that the nexus of his claims is USAR's right and procedure to determine his eligibility to participate in refereeing specific events.

This is exactly the kind of situation that the TED STEVENS ACT is designed to control over, which Plaintiff even admits in his Response when he writes "the scope of the Ted Stevens Act, which governs eligibility disputes and governance decisions within national governing bodies".[9] Plaintiff's claims, by the plain language of his own pleadings, are founded in a dispute over USAR's criteria for determining Plaintiff's participation as a contractor in individual events; a dispute over eligibility and governance decisions.

In *Pliuskaitis v. USA Swimming*, the case Plaintiff wrongly asserts is not applicable here,[10] that case's plaintiff is noted as making the same argument Plaintiff made in his response, namely that "federal courts have jurisdiction to hear his claims because his state-law claims 'do not pertain to his eligibility.'" 720 F. App'x 481, 485 (10th Cir. 2018). That circuit court rejected this argument, though, because, as in this instance, "[plaintiff's] amended complaint does not, in fact, do anything other than seek damages based on [defendant's] eligibility determination, **thus ending his case**." *Id.* (emphasis added). For the exact same reason, this Plaintiff's case must now end.

### C. **Plaintiff Has Inadequately Pled Tortious Interference Against USAR.**

Plaintiff's Response attempts to modify his tortious interference claim to cover both existing and potential contracts. As an initial matter, Plaintiff is entirely unable to satisfy the

---

[7] *Id*. at ¶ 35(b).
[8] *Id*. at ¶ 38(a).
[9] [Doc. 15, pg. 4].
[10] *Id.*

requirements for pleading tortious interference of an existing contract by USAR. To do so, Plaintiff would have to plead: (1) the existence of a contract subject to interference, (2) willful and intentional interference, (3) that proximately causes damage, and (4) actual damage or loss. *Specialties of Mex. Inc. v. Masterfoods USA*, 2010 WL 2488031, at *9 (S.D.Tex. June 14, 2010) (citing *All Am. Tel., Inc. v. USLD Commc'ns, Inc.*, 291 S.W.3d 518, 531 (Tex.App.-Fort Worth 2009, pet. denied)). To satisfy the second element, Plaintiff must plead that the interference was done by a third party, not a contracting party. *See Hoffman v. L & M Arts,* 774 F. Supp. 2d 826 (N.D. Tex. 2011) (citing *Lama Holding Co. v. Smith Barney Inc.*, 668 N.E.2d 1370, 1375 (N.Y.1996) (requiring knowledge of contract and intentional procurement of third-party breach without justification as elements of tortious interference claim)).

Plaintiff identifies no existing contract at all in his Complaint[11] that he alleges USAR interfered with, and the only existing contract he identifies in his Response was one between himself and USAR.[12] Therefore, there was <u>never</u> an existing contract between Plaintiff and any other third party that Plaintiff alleges USAR interfered with, and as such Plaintiff cannot plead tortious interference of a contract.

Plaintiff also attempts to plead that USAR tortiously interfered with Plaintiff's purely hypothetical future referee assignments for MLR or CRAA, but again falls far short of the minimum pleadings required for this claim.[13] To plead tortious interference of a prospective business relation before a district court, a plaintiff must include in their pleadings: (1) a reasonable probability that the plaintiff would have entered into a business relationship; (2) and independently tortious or unlawful act by the defendant that prevented the relationship from occurring; (3) the

---

[11] [Doc. 3, ¶ 34].
[12] [Doc. 14, pg.6].
[13] *Id*.

defendant did such act with a conscious desire to prevent the relationship from occurring of the defendant knew the interference with certain or substantially certain to occur as a result of the conduct; and (4) the plaintiff suffered actual harm or damages as a result of the defendant's interference. *Specialties of Mex. Inc. v. Masterfoods USA*, 2010 WL 2488031, at *10 (S.D. Tex. June 14, 2010).

Plaintiff admits that this claim is based on "Plaintiff's officiating *opportunities* at high-profile events. These *opportunities*, including the CRAA Championships and Major League Rugby (MLR) matches".[14] But a plaintiff must plead more than the mere possibility that they might have gotten a contract to sufficiently plead a claim of tortious interference with a potential contract.

In the case *M-I LLC v. Stelly*, where the Texas Southern District Court reviewed another 12(b)(6) motion to dismiss of a tortious interference with a prospective business relation claim, that court noted that the plaintiff in that case had pled nothing more specific to satisfy the first element of the claim than that "it 'had valid contracts with certain customers,'". 733 F. Supp. 2d, at 774. Plaintiff Hale pleads even less, saying only that he had "business expectations"[15] and "professional expectations."[16] Plaintiff's wishfulness falls far short of the Rule 12(b)(6) standard to plead an actual probability of entering into a specific contract. *See M-I LLC*, 733 F.Supp.2d, at 776 ("The closest [plaintiff's pleadings] comes is its averment that it 'has provided [w]ellbore cleanout tools and services to BP for other ThunderHorse wells, and expected to provide the same for 778 # 2,' but instead lost the project to WES. This statement, however, does not plead a reasonable probability that M-I and BP would have entered into a contractual relationship for the ThunderHorse project.")

---

[14] [Doc. 14, pg. 6] (emphasis added).
[15] [Doc. 3, ¶ 34].
[16] [Doc. 14, pg. 6].

Because Plaintiff cannot offer more than wishful hopes of what contracts he wanted to get, his claim for tortious interference of potential contracts is properly dismissed.

### D. **Plaintiff Cannot Bring Suit Against USAR for Retaliation Under U.S.C. § 1981**

Plaintiff attempts to partially rehabilitate his Retaliation claim against USAR in his Response by claiming for the first time that it is brought under 42 U.S.C. § 1981.[17] However, that does nothing to change the fact that refereeing for different rugby organizations is not an enshrined protected activity. To plead a Section 1981 Retaliation Claim, a plaintiff's complaint must include that: (1) an employee engaged in an activity *protected by whichever statute the claim is brought under*; (2) that an adverse employment action occurred; and (3) that a causal link existed between the protected activity and the adverse employment action. *See Gorman v. Verizon Wireless Tex., L.L.C.*, 753 F.3d 165, 170 (5th Cir. 2014) (Texas Labor Code and Title VII retaliation); *Davis v. Dallas Area Rapid Transit*, 383 F.3d 309, 319 (5th Cir. 2004) (Section 1981 and Title VII retaliation).

Plaintiff provides no statute or case law designating the act of him choosing to referee other organizations' rugby matches as a protected activity under § 1981. This is because no such law exists. In fact, as previously stated, "[t]he protections of the First and Fifth Amendment do not extend to private conduct, only to government action." *Carter v. Transp. Workers Union of Am. Loc. 556*, 353 F. Supp. 3d 556, 574 (N.D. Tex. 2019). It is settled law that no actions by NGBs, such as USAR, are to be construed as anything but private conduct. *San Francisco Arts & Athletics, Inc. v. U.S. Olympic Committee*, 483 U.S. 522, 544-45 (1987) ("Neither the conduct nor the coordination of amateur sports has been a traditional governmental function.") Because Plaintiff, by his own pleadings, was never engaged in a recognized § 1981 protected activity, Plaintiff will

---

[17] [Doc. 14, pg. 10].

never be able to properly plead his Retaliation claim against USAR, and so it is properly dismissed.

### E. <u>Plaintiff Cannot Sufficiently Plead Defamation</u>

Plaintiff improperly attempts to amend his pleadings through his Response (*see supra.*) to specify for the first time that the defamatory statement made about him by USAR were that he was "Unprofessional, Not a team player, and Unfit for officiating assignments due to his participation in NCR events."[18] Even if Plaintiff were granted leave to amend his pleadings to clarify this point, such statements would not meet the minimum requirements for pleading defamation. As previously explained, "to maintain a defamation claim [in Texas district courts], the plaintiff must plead facts that show the defendant: (1) published 'a **false** statement of fact to a third party, (2) that was defamatory concerning the plaintiff, (3) with the requisite degree of fault, and (4) damages, in some cases.'" *Parker v. Spotify, USA, Inc.*, 569 F.Supp 519, 528 (W.D. Tex. 2021) (quoting *In re Lipsky*, 460 S.W.3d 579, 593 (Tex. 2015)(emphasis added)).

As this very Court noted back in May 2024, "[f]or a statement to be actionable in a defamation claim, the statement must 'assert an objectively verifiable fact, rather than an opinion.' […] Whether an alleged defamatory statement constitutes an opinion or a or a verifiable falsity is a question of law. This legal question should be answered from the perspective of a 'reasonable person's perception of the entirety of a publication and not merely on individual statements.'" *Luke v. Schwartz*, 2024 WL 2304594, at *3 (W.D. Tex. May 21, 2024) (quoting *Campbell v. Clark*, 471 S.W.3d 615, 625 (Tex. App.—Dallas 2015, no pet.); *Bentley v. Bunton*, 94 S.W.3d 561, 579 (Tex. 2002)) (citations omitted). Descriptors such as "unprofessional", "not a team player", and "unfit" have no empiric measurement, and are the definition of a subjective opinion that reasonable people

---

[18] [Doc. 14, pg. 14].

can disagree on. Therefore, Plaintiff has identified no statement of **fact** that would allow him to plead defamation, and this claim is properly dismissed.

### F. <u>Plaintiff Has Not Sufficiently Pled Racial Discrimination.</u>

Plaintiff clarifies in his Response for the first time that he brings his discrimination claim under Section 1981,[19] but to bring such a claim his pleadings must include that: "(1) he is a member of a racial minority; (2) the defendant had an intent to discriminate on the basis of race; and (3) the discrimination concerned one or more of the activities enumerated in the statute, such as the making and enforcing of a contract." *Bellows v. Amoco Oil Co.*, 118 F.3d 268, 274 (5th Cir. 1997). Plaintiff's First Amended Complaint does nothing more than suggest that he was discriminated on based on race,[20] which is below the standard for pleading the second required element. *See Ramirez ex rel. Ramirez v. Bexar Cnty., Texas,* 2010 WL 2555143, at *2 (W.D. Tex. June 21, 2010) ("Although the plaintiffs suggested in their response to the motion to dismiss that the allegations in various paragraphs of the complaint were motivated by racial animus, nothing about those allegations suggest racial animus.") Because Plaintiff has nothing more than "'naked allegation[s]' of discriminatory intent," dismissal of this claim is proper. *Body by Cook, Inc. v. State Farm Mut. Auto. Ins.*, 869 F.3d 381, 386 (5th Cir. 2017) (quoting *Albert v. Carovano*, 851 F.2d 561, 572 (2d Cir. 1988) (en banc)).

### G. <u>Plaintiff Cannot Plead a Breach of Contract Claim Against USAR Based On the Actions of Other Parties.</u>

Plaintiff attempts to justify his breach of contract claim by stating in his Response for the first time that USAR's "financial arrangement" with MLR "acted to disrupt Plaintiff's contracts

---

[19] [Doc. 14, pg. 13].
[20] [Doc. 3, ¶ 39(c)] ("Plaintiff's removal from events was due to his **participation in NCR events.**) (emphasis added).

and professional opportunities with MLR."[21] Needless to say, even if Plaintiff amended his pleadings to include this it would still not be enough to bring a valid breach of contract claim against USAR, because to do so a Plaintiff must plead: "(1) the **existence** of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract **by the defendant**, and (4) damages sustained by the plaintiff as a result of the breach." *Certain Underwriters at Lloy's of London v. Lowen Valley View, LLC*, 892 F.3d 167, 170 (5th Cir. 2018) (emphasis added). Alleged interference with a hypothetical future contract by a non-party to that contract does not give grounds to plead breach of contract, and so this claim remains proper for dismissal.

## H. Alleged "Futility" is Not Grounds to Skip Required Administrative Remedies Procedures.

Plaintiff acknowledges that he did not exhaust the administrative remedies set by USAR to address the grievances he evidently had with it.[22] however Plaintiff attempts to justify his failing because he at least made "good-faith attempts to resolve these issues internally".[23] Plaintiff non-specifically describes these efforts as him complaining to three people and joining one video call, and because he did not get the outcome he wanted after that "it is unreasonable to require further exhaustion of administrative remedies".[24]

Plaintiff does not actually plead that he exhausted ONE administrative remedy, and he cites no law that allows an aggrieved party to skip this process if they so choose. Per 36 U.S.C. § 220505(b)(9) of the TED STEVENS ACT, the ACT under which USAR is organized, does not grant a private right of action against an amateur national sports organization like USAR. *See e.g. Pliuskaitis v. USA Swimming, Inc.*, 243 F.Supp.3d 1217, 112 (D. Utah 2017) aff'd sub nom.

---

[21] [Doc. 14, pg. 17].
[22] [Doc. 14, pg. 18]
[23] *Id.*
[24] *Id.*

*Pliuskaitis v. USA Swimming*, 720 F.App'x 481 (10th Cir. 2018) ("Plaintiff's claims [regarding an NGB determining he was ineligible to coach for their events] are exactly the type that the Sports Act was designed to address through the rules and regulations set forth by the NGBs of each amateur sport."). Because of this, the ACT requires national amateur sport organizations like USAR to provide robust remedies for disputes like those between its occasional contractors and its employees like McGregor. *See* 36 U.S.C.A. § 220527; *Dolan v. U.S. Equestrian Team, Inc.*, 608 A.2d 434, 437 (App. Div. 1992) ("[t]he comprehensive provisions for arbitration, as well as the legislative history [of the TED STEVENS ACT], clearly demonstrate a congressional determination that disputes shall be resolved by arbitration.")

The TED STEVENS ACT does not provide a mechanism to entirely skip over an amateur sports organization's administrative remedies as Plaintiff admits to have done. Because of this, Plaintiff is barred from bringing a private action, such as those that are the basis for this case, against USAR and its employee McGregor.

## CONCLUSION AND PRAYER

Based on the foregoing, this Court should dismiss Plaintiff's claims against Defendant USAR for Plaintiff's failure to state any plausible claims for relief against USAR for tortious interference, retaliation, defamation, breach of contract, generally claims violation of the Ted Stevens Act, discriminatory treatment, intentional infliction of emotional distress, and disparate treatment, and grant USAR such other and further relief as to which he might be entitled to at law or equity.

10

Date: January 15, 2025                    Respectfully submitted,


                                    **GORDON REES SCULLY MANSUKHANI, LLP**

                                    By: */s/ Philip Robert Brinson*
                                            Philip Robert Brinson
                                            State Bar No. 00787139
                                            TransWestern Tower
                                            1900 West Loop South, Suite 1000
                                            Houston, Texas 77027
                                            (713) 961-3366
                                            prbrinson@grsm.com

                                    **ATTORNEY FOR DEFENDANTS,**
                                    **JAMIE MCGREGOR AND USA RUGBY**


**CERTIFICATE OF SERVICE**

I certify that on January 15, 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, and mailed a copy of the foregoing to:

Justin X. Hale
2904 Sprouted Grain
Seguin, TX
(979) 703-0894

                                            */s/ Philip Robert Brinson*
                                            Philip Robert Brinson