**FILED**

January 20, 2025

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS

BY: _____  CC

DEPUTY

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | | |
|---|---|---|
| **JUSTIN X. HALE** | § | |
| *Plaintiff*, | § | |
| | § | |
| **V.** | § | **CASE NO. <u>1:2024cv01076</u>** |
| | § | |
| **JAMIE MCGREGOR, DIRECTOR OF** | § | |
| **TRAINING & EDUCATION USA RUGBY** | § | |
| **AND** | § | |
| **USA RUGBY** | § | |
| *Defendants*. | § | |

### PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT AND REBUTTAL TO DEFENDANTS' MISCHARACTERIZATIONS OF THE TED STEVENS ACT

Plaintiff Justin X. Hale, proceeding pro se, respectfully submits this reply to Defendants' Opposition to Plaintiff's Motion for Leave to File a Second Amended Complaint. Defendants' opposition rests on a series of mischaracterizations of both Plaintiff's claims and the law, particularly their erroneous reliance on the Ted Stevens Act as a preemptive defense.

The Ted Stevens Act was designed to govern disputes involving eligibility and participation in protected competitions and to ensure fairness in amateur sports governance. It was never intended to shield National Governing Bodies like USA Rugby from accountability for discrimination, retaliation, and tortious interference, which are the heart of Plaintiff's claims. By mischaracterizing the TSA's

scope, Defendants attempt to distract from their unlawful conduct and avoid addressing the substance of Plaintiff's well-pleaded allegations.

This Court should reject Defendants' efforts to dismiss the case on procedural grounds and allow it to proceed to discovery. Plaintiff's Second Amended Complaint addresses the deficiencies identified in Defendants' motions to dismiss, providing detailed factual allegations that substantiate his claims and satisfy the requirements of Rule 15(a)(2). Plaintiff respectfully requests that this Court grant his Motion for Leave to File a Second Amended Complaint.

## I. LEGAL STANDARD FOR GRANTING LEAVE TO AMEND

Rule 15(a)(2) of the Federal Rules of Civil Procedure reflects a preference for resolving cases on their merits rather than procedural technicalities. Leave to amend should be granted freely unless there is evidence of undue delay, bad faith, repeated inability to cure deficiencies, or prejudice to the opposing party. None of these factors are present here.

Plaintiff's amendments address specific issues raised by Defendants in their motions to dismiss, providing clarity and detail to ensure the claims are well-defined and substantiated. These amendments will allow the case to proceed efficiently, avoiding unnecessary procedural disputes and focusing on the core issues at hand.

Granting leave to amend serves the interests of justice by ensuring that all claims are fully presented and considered. Plaintiff respectfully requests that the Court grant his motion to allow the Second Amended Complaint.

## II. DEFENDANTS' RELIANCE ON THE TED STEVENS ACT IS MERITLESS AND MISCHARACTERIZES THE LAW

Defendants assert that Plaintiff's claims are preempted by the Ted Stevens Act (TSA) and should have been resolved through administrative remedies. This argument is not only legally flawed but also directly contradicted by the TSA's own language.

**Scope of the Ted Stevens Act**

The TSA governs disputes related to eligibility and participation in protected competitions, as outlined in 36 U.S.C. § 220505(c)(5):

> "*To facilitate, through orderly and effective administrative procedures, the resolution of conflicts or disputes that involve any of its members and any amateur athlete, coach, trainer, manager, administrator, official, national governing body, or amateur sports organization and that arise in connection with their eligibility for and participation in [...] other protected competition as defined in the constitution and bylaws of the corporation.*"

Plaintiff's claims do not arise from a dispute over eligibility or participation in protected competitions. Instead, Plaintiff's claims center on allegations of retaliation and racial

discrimination for his officiating at events outside USA Rugby's control. These are civil rights violations that fall squarely outside the administrative framework established by the TSA.

**Lack of Administrative Remedies for Employment-Related Issues**

    a.  **Lack of a Clear and Accessible Complaint Process**

The Defendants' presumption of an internal, functional, and accessible process for addressing complaints of discrimination and retaliation within USA Rugby is baseless. At the time of the Plaintiff's initial incident, USA Rugby did not have a Whistleblower page. Its Whistleblower policy wasn't effective until August 2023 (Exhibit A). The subsequent creation of this page after the Plaintiff raised concerns demonstrates a reactive approach to serious issues and underscores the absence of a clear and accessible reporting mechanism at the time the Plaintiff needed it.

Even with the later addition of the Whistleblower page, it lacks any contact information or instructions for reporting discrimination or retaliation. Additionally, the Code of Conduct page, which should outline reporting mechanisms, remained inaccessible, even till this day, returning a 404 error (Exhibit B). This lack of clear guidance further supports the Plaintiff's assertion that USA Rugby has failed to establish effective mechanisms for addressing complaints of this nature.

The Ted Stevens Act emphasizes fair notice and due process, requiring clear guidance on where and how to raise complaints. USA Rugby's failure to provide such guidance at the time of the Plaintiff's initial incident, as evidenced by the absence of a functioning Whistleblower page, deprived the Plaintiff of any meaningful opportunity to exhaust remedies. This further underscores the

inadequacy of any purported administrative processes and strengthens the Plaintiff's argument that seeking redress through the courts was justified.

## b. Reporting to the Alleged Perpetrator Creates a Conflict of Interest

Plaintiff's efforts to address the issue internally were further hindered by a fundamental conflict of interest: the person responsible for enforcing USA Rugby's policies—Jamie McGregor—was also the individual alleged to have engaged in discriminatory and retaliatory conduct. Requiring Plaintiff to report his concerns to McGregor, as the recipient of emails sent to membership@usa.rugby, created an inherent conflict of interest and exposed Plaintiff to further potential retaliation.

This conflict is further evident from communications with David Wilkerson, who informed Plaintiff that he would need to "speak to Jamie" in order to address his concerns regarding USA Rugby. Directing Plaintiff back to McGregor, despite McGregor's role as the central figure in the alleged discriminatory conduct, underscores the inadequacy of USA Rugby's internal processes and the futility of pursuing further remedies.

Plaintiff also raised his concerns with other senior USA Rugby officials, including Rosalind Anderson, Chair of the Rugby Laws Committee, and Nick Ricono, High Performance 7s Referee Manager. When Plaintiff informed Anderson during a self-funded 10-day referee trip to Fiji that he intended to pursue legal action if the discriminatory and retaliatory conduct continued, Anderson dismissively responded, "then do it." Similarly, Ricono displayed complacency, stating that "in the real world, sometimes you have things the boss says that you don't agree with." These comments reflect the

leadership's failure to take Plaintiff's concerns seriously or to provide any meaningful guidance or resolution.

The responses from USA Rugby's leadership, combined with the organization's lack of a clear complaint process, demonstrate the futility of further attempts to exhaust remedies. Plaintiff's proactive efforts to address these issues internally underscore the absence of a functional or impartial mechanism for addressing grievances, justifying his decision to seek redress through the courts.

**Mischaracterization of Preemption**

Defendants grossly mischaracterize the TSA as a blanket preemption of all state law claims related to NGB governance. In reality, the TSA does not—and cannot—preempt claims brought under **42 U.S.C. § 1981**, a federal statute protecting individuals from racial discrimination in contracts. Courts have consistently held that **civil rights claims** are not preempted by industry-specific statutes (*Alexander v. Gardner-Denver Co.*, 415 U.S. 36 (1974)).

## III. Addressing Defendants' Personal Liability Argument

Defendant McGregor's assertion that he cannot be held personally liable for actions taken within the scope of his employment ignores the fact that Plaintiff's allegations involve retaliatory and discriminatory conduct driven by personal animus. McGregor's deliberate actions, such as threatening Plaintiff with exclusion from officiating opportunities, were taken outside the scope of any legitimate employment duties and constitute independent tortious acts for which he can be held personally liable.

# IV. PLAINTIFF'S AMENDMENTS ARE NOT FUTILE AND ADDRESS THE ISSUES RAISED

While the Plaintiff's Second Amended Complaint provides sufficient basis for the claims of tortious interference, retaliation, and discrimination, the Defendants argue that leave to amend would be futile and the proposed amendment amounts to no more than "shuffling deckchairs." In direct response to that argument and Defendants' reliance on *Goldstein v. MCI WorldCom*, Plaintiff points out that the Second Amended Complaint does contain specific factual allegations and can be further fleshed out with specific examples of actual injury resulting from the actions of Defendants.

Defendants' assertion of futility is unsupported and mischaracterizes the substantive enhancements made in Plaintiff's Second Amended Complaint. Plaintiff has provided detailed factual allegations for each claim, including specific examples of retaliatory conduct, lost opportunities, and discriminatory treatment. These allegations are not hypothetical or speculative but are rooted in documented communications and actions by Defendants.

## A. Tortious Interference

Plaintiff's alleges is that defendant McGregor, on behalf of USA Rugby intentionally interfered with both existing and prospective business relationships; accordingly, plaintiff has been excluded from opportunities to officiate based upon its participation in the events organized through NCR.

These lost opportunities resulted in both financial harm—due to the loss of refereeing income—and reputational harm within the rugby community, making Plaintiff's claim for tortious interference both plausible and well-supported.

**B. Retaliation**

Plaintiff's retaliation claim stems from Defendants' adverse actions directly linked to his participation in protected activity, including officiating at NCR events and opposing USA Rugby's unwritten and discriminatory policies. Defendant McGregor, acting on behalf of USA Rugby, explicitly tied Plaintiff's exclusion from officiating opportunities to his participation in NCR events, as evidenced by communications and directives from McGregor.

These actions lacked any legitimate justification or written policy, demonstrating an arbitrary and retaliatory effort to harm Plaintiff's career. Plaintiff's retaliation claim under 42 U.S.C. § 1981 is well-pled, satisfying the elements of protected activity, adverse action, and causal connection.

**C. Discrimination**

The Plaintiff has sufficiently pled a claim for racial discrimination under 42 U.S.C. § 1981 by alleging disparate treatment compared to similarly situated white referees who also officiated NCR events. The Defendants' selective enforcement of their unwritten policies and the preferential treatment afforded to white referees, while the Plaintiff faced exclusion and disqualification, establish a pattern of discriminatory conduct that supports a claim of racial bias. The following examples demonstrate the discriminatory treatment experienced by the Plaintiff:

- Matt Lake: Despite publicly criticizing USA Rugby's organizational practices and officiating at NCR events, Matt Lake, a white referee, was promoted to Chair of the USA Rugby Referees Development Working Group .

- Amelia Luciano: Amelia Luciano, another white referee, officiated a high-profile NCR tournament streamed on the New England Freejacks' (the reigning MLR champions) platform and was subsequently awarded an MLR contract just days later. This swift career advancement, despite participating in NCR events, further highlights the discriminatory treatment faced by the Plaintiff.

- Mike Lawrence, Tom Champa, and Alex Hedquist: These white referees participated in the same or similar Collegiate Rugby Championship (CRC) and National Collegiate Rugby (NCR) events as the Plaintiff but faced no reprimands or career impediments.

The Plaintiff, on the other hand, was subjected to adverse actions for participating in the same types of events. These examples demonstrate a pattern of disparate treatment based on race, supporting the Plaintiff's claim under 42 U.S.C. § 1981. By presenting a detailed comparative analysis of how white referees with similar NCR participation were treated differently, the Plaintiff can effectively demonstrate the discriminatory intent behind the Defendants' actions.

## III. GRANTING LEAVE TO AMEND PROMOTES JUDICIAL EFFICIENCY

Contrary to Defendants' assertions, granting leave to amend will clarify the issues in dispute and streamline the litigation. Plaintiff's Second Amended Complaint addresses the deficiencies

identified in the motions to dismiss by providing detailed factual allegations to support each claim, including specific examples of lost opportunities, retaliatory conduct, and discriminatory treatment.

Granting Plaintiff leave to amend ensures that all claims and allegations are consolidated into a single, clarified pleading, enabling the Court and the parties to focus on the merits of the claims rather than procedural disputes. Defendants' claim that the amendment would waste time is unfounded, as the Second Amended Complaint directly addresses the concerns raised in Defendants' motions to dismiss. This approach not only promotes judicial efficiency but also ensures fairness to all parties involved.

By allowing the case to proceed on its merits, the Court avoids piecemeal litigation and reduces the likelihood of further disputes regarding procedural deficiencies. Plaintiff respectfully requests that this Court grant leave to amend in the interests of efficiency, clarity, and justice.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court grant his Motion for Leave to File a Second Amended Complaint and deny Defendants' opposition. Defendants' reliance on procedural arguments, including their mischaracterizations of the Ted Stevens Act and baseless futility claims, is an attempt to delay and avoid addressing the substance of Plaintiff's claims.

Plaintiff's claims highlight critical issues of discrimination and retaliation, which deserve to be resolved on their merits. The Second Amended Complaint provides a clarified and detailed basis for

these claims, addressing any concerns raised in Defendants' motions to dismiss. Granting leave to

amend is essential to ensuring fairness, accountability, and justice in this matter.

Dated: January 20, 2025

Respectfully submitted,

*/s/ Justin X. Hale*
Justin X. Hale
2904 Sprouted Grain
Seguin, TX
(979) 703-0894

## CERTIFICATE OF SERVICE

I certify that on  Jan 20, 2025 , I electronically filed the foregoing with the Clerk of the Court using the Electronic Submission For Pro Se Filers, and mailed a copy of the foregoing on  Jan 21, 2025  to:

Philip Robert Brinson
1900 West Loop South, Suite 1000
Houston, Texas 77027
prbrinson@grsm.com

/s/ Justin X. Hale

Justin X. Hale

2904 Sprouted Grain

Seguin, TX

(979) 703-0894

justinxhale@gmail.com

# EXHIBITS

Exhibit A - Whistleblower page





# Exhibit B - Code of Conduct Page

