IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| JUSTIN X. HALE | § | |
| *Plaintiff,* | § | |
| | § | |
| V. | § | CASE NO. <u>1:2024cv01076</u> |
| | § | |
| JAMIE MCGREGOR, DIRECTOR OF | § | |
| TRAINING & EDUCATION USA RUGBY | § | |
| AND | § | |
| USA RUGBY | § | |
| *Defendants.* | § | |

**SUR-REPLY/RESPONSE TO DEFENDANTS JAMIE MCGREGOR AND USA RUGBY'S REPLIES TO PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS**

## I. INTRODUCTION

Plaintiff Justin X. Hale, proceeding pro se, submits this Sur Reply to address and rebut the arguments raised by Defendants Jamie McGregor ("McGregor") and USA Rugby ("USAR") in their Replies (Documents 19 and 20). Defendants have continued to rely on mischaracterizations of the law, particularly the **Ted Stevens Act**, and procedural arguments to obscure the merits of Plaintiff's claims. Their arguments are meritless and fail to establish any grounds for dismissal.

Additionally, SafeSport's explicit statement that Plaintiff's complaint falls outside its jurisdiction, combined with USA Rugby's inadequate and inaccessible administrative processes,

further demonstrates the baselessness of Defendants' preemption arguments under the TSA. Plaintiff's

Second Amended Complaint clearly addresses the issues raised by Defendants and ensures that the case

proceeds on its merits.

**II. ARGUMENT**

**A. The Ted Stevens Act Does Not Preempt Plaintiff's Claims**

Defendants argue that the **Ted Stevens Act (TSA)** preempts Plaintiff's state law claims and

bars this action. This argument fundamentally misunderstands the scope and purpose of the TSA.

Plaintiff's claims do not involve eligibility disputes or participation in "protected competitions," which

are the central focus of the TSA. Instead, Plaintiff's claims allege **retaliation**, **discrimination**, and

**tortious interference** — issues unrelated to eligibility or governance disputes.

*"Nothing in this section shall be construed as preempting or abrogating the duty of care of a*

*national governing body under state law or common law. 36 USCA 220524(b)."* Plaintiff's claims fall

within both state and common laws. As such, these claims are not preempted. Moreover, the TSA

specifically states that USA Rugby's jurisdiction and authority is restricted because the "exclusive

Jurisdiction" over college amateur athletic competition belongs to NCR, as a college amateur athletic

organization.

1. **The Ted Stevens Act Does Not Mandate Administrative Exhaustion for Plaintiff's Claims**

Defendants cite **36 U.S.C. § 220505(c)(5)** and **§ 220527**, but these provisions pertain to disputes involving athletes, eligibility, and participation in protected competitions. Plaintiff's claims arise from employment-related discrimination and retaliation, which are outside the TSA's purview.

Notably, **§ 220527(a)** states that amateur sports organizations "may" file complaints about National Governing Bodies (NGBs) with the USOPC, emphasizing that such processes are permissive, not mandatory. The TSA does not require Plaintiff to exhaust administrative remedies for his civil rights claims.

The USA Rugby grievance process does not allow for resolving Plaintiff's substantive claims because it is limited to "procedural matters." Also, the TSA provisions regarding resolving disputes arising under the Act and not the state and common law claims made by Plaintiff.

2. **SafeSport and USA Rugby's Failures Further Undermine Defendants' Argument**

SafeSport's decision to close Plaintiff's case, citing it as an "employment issue" outside its jurisdiction, directly contradicts Defendants' claims that Plaintiff failed to exhaust administrative remedies. This finding underscores that no applicable administrative process exists for Plaintiff's discrimination and retaliation claims.

3

Moreover, USA Rugby's inadequate whistleblower policies and inaccessible Code of Conduct page further reinforce that Plaintiff had no viable avenue for resolution under the Ted Stevens Act or otherwise.

Additionally, the TSA does not preempt the claims against USA Rugby under state or common law. There is nothing in the TSA's language which specifically mandates that any and all claims, including those outside the Act, are mandated to use USA Rugby's dispute resolution process.

**3. Addressing Procedural Concerns and Clarifying Evidence**

The Defendants have raised concerns regarding the submission of evidence, such as the screenshots of the USA Rugby website, as a violation of procedural rules. These arguments mischaracterize the purpose of this evidence. The Plaintiff is not attempting to introduce new claims, but rather to demonstrate that the Defendants' assertion of the Ted Stevens Act as a procedural defense is baseless.

The Plaintiff has consistently maintained that there were no viable administrative channels available to exhaust. The submitted evidence, including the screenshots of the non-functioning "Code of Conduct" page and the absence of contact information on the "Whistleblower" page, are offered to support this fact and show the deficiency of the administrative process.

These details are not an attempt to amend the pleadings or introduce new claims, but a response to the Defendants' contentions that Plaintiff failed to exhaust administrative remedies. The

Plaintiff is simply providing specific factual examples to demonstrate that those processes were not available or functional.

The Plaintiff has submitted a Second Amended Complaint that addresses the deficiencies identified in Defendants' motions to dismiss. The details and evidence are intended to clarify the existing claims and provide greater specificity, not to introduce new claims. This distinction is crucial, and the Court should recognize that these additions are necessary to fully present the Plaintiff's case on its merits. The Plaintiff is not attempting to improperly introduce new claims by introducing evidence, but to show the Defendant is trying to use the Ted Stevens Act as a shield, when no such process exists.

**4. Defendants' Misuse of Pliuskaitis v. USA Swimming**

Defendants' reliance on Pliuskaitis v. USA Swimming, Inc., 243 F. Supp. 3d 1217 (D. Utah 2017), is misplaced. Pliuskaitis involved an eligibility dispute governed by the TSA, whereas Plaintiff's claims address retaliation and discrimination, not eligibility. The facts of Pliuskaitis are irrelevant to Plaintiff's case.

Additionally, Pliuskaitis dealt with arbitration decisions regarding an athlete's eligibility to participate in international competitions. Plaintiff's claims, by contrast, involve McGregor's retaliatory and discriminatory conduct related to employment opportunities and are entirely distinct from the facts and issues addressed in Pliuskaitis.

The Pliuskaitis case also cites *Lee v. U.S. Taekwando Union, 331 F.Supp. 2d 1252 (D. Hi. 2004)* which confirms that the Ted Stevens Act allows for lawsuits matters outside of the Act. See also, *Slaney v. International Amateur Athletic Federation, 244 F.3d 580 (7th Cir. 2001).*

**B. McGregor's Individual Liability is Properly Alleged**

Defendants argue that McGregor cannot be held individually liable because he was acting within the scope of his employment. This argument is without merit. Under Texas law, "when an individual commits a tort while acting within his corporate capacity, either the corporation can be vicariously liable or the individual can be personally liable, or both, but the individual cannot be held 'corporately liable.'" *Transcor Astra Group S.A. v. Petrobras America Inc.*, 650 SW 462, 478-479 (Tex. 2022).

**McGregor's Actions Constitute Tortious Interference**

The Defendants' arguments attempt to diminish the Plaintiff's claim of tortious interference. The Plaintiff maintains that Defendant McGregor, acting on behalf of USA Rugby, intentionally interfered with Plaintiff's contracts and business opportunities. While the Plaintiff has already cited *Texaco Inc. v. Pennzoil Co.* (1987) and *Locke v. Warner Bros., Inc.* (1997), it is important to directly connect the actions of the defendants to the specific elements of tortious interference.

McGregor's communications were not just statements; they were deliberate actions designed to disrupt Plaintiff's business relationships and future career prospects. After Plaintiff participated in NCR events, McGregor communicated false and malicious information to key decision-makers at

CRAA and MLR, resulting in the exclusion of Plaintiff from specific events. This intentional action caused direct financial harm and significant damage to Plaintiff's professional opportunities.

The intent behind McGregor's actions was not merely to enforce rules, but to intentionally undermine the Plaintiff's professional opportunities due to his participation in NCR events. The fact that McGregor stated, after denying Plaintiff's future opportunities, that he would "consider adding him back to 'the list'" demonstrates that McGregor's actions were not based on legitimate policy, but were an attempt to control Plaintiff's career choices. This is a clear example of tortious interference.

## C. Defamation Claims Are Sufficiently Pled

Defendants argue that Plaintiff has not adequately specified the false statements made by McGregor. This is incorrect. Plaintiff's Second Amended Complaint clearly identifies statements made by McGregor to third parties, including accusations that Plaintiff was "unprofessional," "not a team player," and "unfit to officiate due to participation in NCR events." These statements were presented as fact, caused harm to Plaintiff's reputation, and meet the pleading standards for defamation under federal law.

Defendants' replies fail to provide any meaningful rebuttal to these detailed allegations. Instead, they rely on vague assertions that Plaintiff's claims lack specificity, ignoring the substantial evidence presented in the Second Amended Complaint.

## D. Plaintiff's Retaliation Claim Under § 1981 is Valid

7

Defendants erroneously assert that refereeing for NCR is not a "protected activity" under **42 U.S.C. § 1981**. This claim ignores the fact that § 1981 protects individuals from racial discrimination in contractual relationships. Plaintiff alleges that he was excluded from officiating opportunities because of his race and participation in NCR events, while similarly situated white referees faced no such consequences. These allegations establish a prima facie case for retaliation under § 1981.

## III. DEFENDANTS' "UNDUE DELAY" CLAIM IS UNFOUNDED

Defendants' argument that Plaintiff's motion for leave constitutes "undue delay" is without merit. Plaintiff filed his motion before discovery began and within a reasonable timeframe. The cited *Goldstein v. MCI WorldCom* case does not support their position, as it did not address undue delay.

Furthermore, as *Little v. Liquid Air Corp.* (952 F.2d 841, 846 (5th Cir. 1992)) clarifies, delay must significantly disrupt the trial process to warrant denial of leave to amend. Plaintiff's motion causes no such disruption and ensures that all claims are fully and fairly adjudicated.

## IV. LACK OF EVIDENCE OF INTERNAL POLICIES UNDERMINES DEFENDANTS' ARGUMENTS

Throughout their filings, Defendants have failed to substantiate their claims with any reference to or reliance on specific USA Rugby policies. This omission is glaring, particularly given their argument that Plaintiff failed to exhaust administrative remedies as purportedly required under the Ted Stevens Act.

If Defendants wish to rely on the existence of administrative remedies, it is incumbent upon them to demonstrate that such remedies exist and are accessible. However, Defendants have not identified a single internal policy or procedure within USA Rugby that Plaintiff allegedly failed to follow. This lack of evidence underscores the absence of a functional and transparent administrative process for addressing complaints of discrimination, retaliation, or other grievances.

Plaintiff has demonstrated that USA Rugby's publicly available resources, such as the Whistleblower page and the Code of Conduct page, fail to provide any meaningful guidance or contact information for filing such complaints. Instead, Defendants ask this Court to assume the existence of a process that they have not and cannot substantiate.

This failure to provide evidence of internal policies not only weakens Defendants' preemption argument but also reinforces Plaintiff's assertion that no legitimate administrative remedies were available to exhaust. The absence of these policies raises fundamental questions about the adequacy of USA Rugby's internal governance and due process, further justifying Plaintiff's pursuit of judicial remedies in this case.

**IV. CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that this Court grant his Motion for Leave to File a Second Amended Complaint and deny Defendants' motions to dismiss. Defendants' arguments rely on mischaracterizations of the law and unsupported procedural claims, which fail to address the substantive merits of Plaintiff's allegations. Plaintiff's Second Amended Complaint clarifies and substantiates his claims, ensuring that this case proceeds on its merits.

Dated: January 24, 205

Respectfully submitted,

*/s/ Justin X. Hale*
Justin X. Hale
2904 Sprouted Grain
Seguin, TX
(979) 703-0894
justinxhale@gmail.com

**CERTIFICATE OF SERVICE**

I certify that on  Jan 24, 2025 , I electronically filed the foregoing with the Clerk of the Court using the Electronic Submission For Pro Se Filers, and e-mailed a copy of the foregoing on  Jan 24, 2025  to:

Philip Robert Brinson
1900 West Loop South, Suite 1000
Houston, Texas 77027
prbrinson@grsm.com

/s/ Justin X. Hale
Justin X. Hale
2904 Sprouted Grain
Seguin, TX
(979) 703-0894
justinxhale@gmail.com