**FILED**

July 10, 2025

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS

BY: _____ CC

DEPUTY

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | | |
|---|---|---|
| **JUSTIN X. HALE** | § | |
| *Plaintiff,* | § | |
| | § | |
| **V.** | § | **CASE NO. <u>1:2024cv01076</u>** |
| | § | |
| **JAMIE MCGREGOR, DIRECTOR OF** | § | |
| **TRAINING & EDUCATION USA RUGBY** | § | |
| **AND** | § | |
| **USA RUGBY** | § | |
| *Defendants.* | § | |

---

### JUSTIN HALE'S OBJECTIONS TO THE
### REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

---

Now Into Court, comes Plaintiff, Justin X. Hale, and, pursuant to F.R.C.P. Rule 72, files his Objections to the Magistrate Judge's Report and Recommendations (hereinafter referred to as the "Report").

**Introduction and Summary**

This case is about retaliation, racial discrimination, and defamation—not eligibility. I bring my claims under 42 U.S.C. § 1981 and Texas tort law, not under the Ted Stevens Act. (See R&R at 4, 6–10, Dkt 32.) I remained certified and continued to receive and tender officiating assignments until Major League Rugby and Club 7s contracts were abruptly withheld in March 2024. The Magistrate judge nevertheless treated my state-law and civil-rights claims as if they were challenges to eligibility and

1

recommended their dismissal under the Ted Stevens Act. That conclusion overlooks both the text of the statute and the facts in the record of my case filing.

The Report relies on the Act's Olympic eligibility provisions. However, the matches that triggered the retaliation were domestic college competitions. Congress specifically removed those events from a national governing body's eligibility authority, like USA Rugby, by stating that this power does not extend to "amateur athletic competition specified in section 220526." The statute also provides that "nothing in this section shall be construed to preempt or otherwise abrogate the duty of care of a national governing body under State law or the common law."

I attempted every available internal channel—whistleblower page, Code of Conduct page, SafeSport, and direct calls to leadership—but was rebuffed at every step. My Second Amended Complaint explains that Mr. McGregor and USA Rugby blocked me from paid assignments because I worked a National Collegiate Rugby championship and because of my race. I raised my concerns with Mr. McGregor on two occasions: a May 1, 2023 call, filed as Exhibit P (transcript at SAC Ex. B), and during a March 25, 2024 Zoom meeting witnessed by Marquise Goodwin, where Mr. McGregor repeated the same threats. During a ten-day trip to Fiji, I informed Rosalind Anderson—then the Chair of the Referee Leadership Council's Development Committee, now USA Rugby's Referee Development Coordinator and Referee Administrator for Major League rugby —of my intent to pursue legal action if the discriminatory practices continued; she replied, "Well, you should do it." I also spoke with Nick Ricono, the USA Rugby High Performance Sevens Referee Manager, who told

me in early July 2024 that I would continue to lose assignments unless I "do things that leadership says, even if I don't agree with it." No one offered any internal remedy.

Because the statute preserves state-law duties, carves out the competitions at issue, and provides no compulsory internal process, the Report's preemption, exhaustion, and dismissal-with-prejudice analyses all fail. The following specific objections explain why the Ted Stevens Act does not bar my tort and civil-rights claims and why dismissal with prejudice is improper.

**Objection One: The Report Misapplies the Ted Stevens Act by Treating Personal Civil-Rights and Tort Claims as Eligibility Disputes**

**Issue**

Whether the Magistrate judge correctly held that the Ted Stevens Act preempts my retaliation, racial discrimination, defamation, and tortious-interference claims by categorizing them as eligibility challenges.

**Rule**

The Ted Stevens Act governs only formal eligibility questions and internal governance under a national governing body's certification or insurance framework. Congress expressly carved out ordinary tort and civil-rights duties, stating, "Nothing in this section shall be construed to preempt or otherwise abrogate the duty of care of a national governing body under State law or the common law"

(36 U.S.C. § 220524(b)). In addition, the Act limits eligibility authority "except for amateur athletic competition specified in section 220526" (36 U.S.C. § 220523(a)(5)).

**Application**

Plaintiff respectfully submits that the Report's foundational premise, asserting that Plaintiff's claims "center on whether Defendants have complied with the Ted Stevens Act," misapprehends the nature of Plaintiff's action. Plaintiff does not invoke any right under the Ted Stevens Act; rather, Plaintiff asserts that the Act does not apply to his claims, which arise independently under 42 U.S.C. § 1981 and Texas law. The Report appears to categorize Plaintiff's state-law and civil-rights claims as challenges to eligibility, thereby treating any dispute involving refereeing as an "eligibility fight". This framing overlooks critical statutory limitations and the actual nature of Plaintiff's allegations. Plaintiff never lost his USA Rugby certification and continued to receive officiating assignments until Major League Rugby (MLR) and Club 7s contracts were abruptly withheld in March 2024. Therefore, this dispute does not challenge eligibility under the Act but instead challenges how Defendants "selectively and discriminatorily blocked" Plaintiff from paid assignments and other opportunities due to "retaliation and race".

The Ted Stevens Act explicitly limits the authority of National Governing Bodies (NGBs), such as USA Rugby, over certain competitions. The Report's preemption determination primarily relies on an "eligibility" analysis derived from cases involving participation in the Olympics, which Plaintiff contends is not directly applicable here because Plaintiff's complaint "does not raise any claims

regarding Olympic or international eligibility or participation". Instead, the dispute centers on domestic collegiate and professional competitions. Congress made these carve-outs clear in 36 U.S.C. § 220523(a)(5), which states that an NGB "has no authority to establish eligibility procedures for participation" in competitions "except for amateur athletic competitions specified in section 220526 of this title". The events at issue – specifically domestic college competitions (such as the Collegiate Rugby Championships or CRCs, operated by National Collegiate Rugby or NCR) and professional MLR matches – fall squarely within this "exclusive jurisdiction" carve-out. Therefore, Plaintiff submits that USA Rugby lacks authority over eligibility for these specific events under the TSA, which implicates the Report's preemption and jurisdictional analysis as it pertains to these events.

Furthermore, the Ted Stevens Act includes a crucial "Rule of Construction" that preserves state-law duties. As stated in 36 U.S.C. § 220524(b): "Nothing in this section shall be construed to preempt or otherwise abrogate the duty of care of a national governing body under State law or the common law". A nearly identical limiting language applies to an NGB's "general duties," and a similar rule exists for the USOPC under 36 U.S.C. § 220505(d)(3). This statutory language explicitly preserves state-law duties, directly countering the Report's findings of preemption for Plaintiff's tortious interference, defamation, intentional infliction of emotional distress, and breach of contract claims. Plaintiff's federal civil rights claims under 42 U.S.C. § 1981 are also not preempted.

Moreover, the "exclusive jurisdiction" argument further supports Plaintiff's position regarding the inapplicability of any exhaustion of internal remedies. If the events giving rise to Plaintiff's claims (domestic college and professional MLR matches) are outside USA Rugby's eligibility authority under

the TSA, then the Act's arbitration provisions are, by definition, inapplicable to disputes stemming from these events. It is important to note that sections 220523 (NGB authority) and 220526 (exclusive jurisdiction) are not included in the list of TSA sections under 220527 that can be filed as a complaint against a national governing body. This statutory omission suggests that there is no administrative avenue under the Act for these specific violations, thereby indicating that judicial review is the appropriate path. This further supports Plaintiff's argument that any exhaustion requirement would be futile due to the insufficient or unavailable internal processes, as evidenced by SafeSport declining jurisdiction over Plaintiff's "employment-based" complaints.

**Conclusion**

Because the Act does not govern personal harms, because I do not assert any right under the Act, and because it expressly preserves ordinary tort and civil-rights duties while carving out the specific competitions involved here, the Magistrate judge erred in recommending dismissal of these claims under the Ted Stevens Act.

**Objection Two: No Meaningful Internal Remedy Existed**

**Issue**

Whether the Magistrate judge correctly held that I was required to exhaust an internal grievance or arbitration process under the Ted Stevens Act before bringing my state-law and civil-rights claims.

**Rule**

Exhaustion under the Act requires (1) a clear, accessible internal procedure and (2) that the dispute actually falls within the Act's eligibility or governance framework.

**Application**

Plaintiff respectfully submits that the Report erred in concluding that he was required to exhaust an internal grievance or arbitration process under the Ted Stevens Act ("the Act") for his claims. This conclusion appears to overlook critical statutory limitations of the Act and the demonstrable futility of available internal processes.

First, as elaborated in Objection One, Plaintiff's claims do not arise under the Ted Stevens Act, nor do they concern Olympic or international eligibility or participation. Moreover, the Act expressly preserves ordinary tort and civil-rights duties, stating that nothing in its sections should be "construed to preempt or otherwise abrogate the duty of care of a national governing body under State law or the common law" (36 U.S.C. § 220524(b)). Instead, the dispute centers on domestic collegiate and professional competitions, over which USA Rugby (USAR) lacks authority to establish eligibility procedures under 36 U.S.C. § 220523(a)(5), which carves out competitions specified in section 220526. If the events giving rise to Plaintiff's claims are outside USA Rugby's eligibility authority under the Act, then the Act's arbitration provisions are, by definition, inapplicable to disputes stemming from these events. It is important to note that sections 220523 (NGB authority) and 220526 (exclusive jurisdiction) are not included in the list of Act sections under 220527 that can be filed as a

complaint against a national governing body. This statutory omission strongly suggests that no administrative avenue exists under the Act for these specific violations, indicating that judicial review is the appropriate path.

Second, Plaintiff actively attempted to utilize every available internal channel to resolve the issues, including the whistleblower page, Code of Conduct page, SafeSport, and direct calls to leadership, but was "rebuffed at every step". These attempts highlight the insufficient or unavailable internal processes, rendering any exhaustion requirement futile. Specific instances of these futile efforts include:

- **May 1, 2023, call with Jamie McGregor**: Jamie McGregor informed Plaintiff he was disqualified from the CRAA 7s Championship due to his participation in an NCR tournament, which McGregor claimed was "not sanctioned". When Plaintiff questioned why this policy was not in writing, McGregor offered to send a document about the split and consequences but stated USA Rugby would "support the people who support us," implying a lack of remedy for those who did not comply. McGregor offered no remedy and instead threatened further exclusion.

- **January 12, 2024, in-person with Rosalind Anderson**: During a 10-day trip to Fiji, Plaintiff informed Rosalind Anderson (then Chair of the Referee Leadership Council's Development Committee, now USA Rugby's Referee Development Coordinator and MLR Referee Administrator) of his intent to pursue legal action if discriminatory practices

continued. Ms. Anderson dismissively replied, "Well, you should do it". This conversation was witnessed by multiple referees.

- **March 25, 2024, Zoom meeting with Marquise Goodwin**: Mr. Goodwin arranged and witnessed the meeting where Mr. McGregor again refused to address Plaintiff's concerns. McGregor explicitly stated that Plaintiff would need to refrain from participating in high-profile NCR events to regain access to MLR opportunities, but refused to guarantee anything in return. McGregor dismissed Plaintiff's concerns about the legality of his actions, insisting that his management style and USA Rugby's funding justified his authority to dictate referees' activities.

- **Early July 2024, phone call with Nick Ricono**: Following his exclusion from the 2024 Club 7s Championship, Plaintiff spoke by phone with Nick Ricono, USA Rugby's High Performance Sevens Referee Manager. Mr. Ricono informed Plaintiff he was not selected due to his "lack of complying with management directive 'even if we don't agree with them'," referencing Plaintiff's participation in CRCs and other NCR events. Mr. Ricono told Plaintiff he would continue to lose assignments unless he "do[es] things that leadership says, even if I don't agree with it".

Furthermore, SafeSport explicitly declined jurisdiction over Plaintiff's complaints, characterizing them as "employment-based" issues that fall outside its purview. This external determination directly contradicts the assertion that an administrative remedy under the Act was available. Defendants themselves have failed to identify any specific internal policy or procedure within

USA Rugby that Plaintiff allegedly failed to follow, further supporting the argument that no functional or transparent administrative process exists for addressing such grievances.

Additionally, the internal process itself presented a fundamental conflict of interest, as Mr. McGregor, the individual alleged to have engaged in discriminatory and retaliatory conduct, was also the person responsible for enforcing USA Rugby's policies. Directing Plaintiff to report concerns to the alleged wrongdoer undermines the adequacy of any internal process and exposes the complainant to potential further retaliation.

Therefore, because the Act's arbitration provisions are inapplicable to the nature of Plaintiff's claims and because Plaintiff demonstrated diligent but futile attempts to seek internal resolution through non-existent or inadequate processes, no exhaustion requirement should have been imposed.

**Conclusion**

Because no clear or working grievance or arbitration process was available, and because the Act does not apply to the specific competitions at issue or the nature of Plaintiff's claims, the Report erred in finding that Plaintiff was required to exhaust the Act's procedures before proceeding in federal court.

**Objection Three: Dismissal With Prejudice Was Improper When No Arbitration or Grievance Process Existed**

**Issue**

Whether the Magistrate judge correctly recommended dismissal of my claims with prejudice rather than staying the case or permitting me to proceed, even though no arbitration or grievance process was available under the Ted Stevens Act (R&R at 9).

**Rule**

When a court finds that arbitration or an internal grievance process may apply, it should stay the case under 9 U.S.C. § 3 rather than dismissing with prejudice. Even under Federal Rule of Civil Procedure 12(b)(6), dismissal with prejudice is reserved for claims that are incurable or where amendment would be futile.

**Application**

No arbitration clause or workable grievance channel ever existed for my claims. Neither USA Rugby's Motion to Dismiss (Dkt 7) nor Mr. McGregor's Motion to Dismiss (Dkt 6) proposes any such internal process, which confirms that no functional alternative exists (see R&R at 9). Defendants also do not invoke any binding arbitration provision in the Ted Stevens Act—nor could they, since "neither this paragraph nor any other provision of [the Act] shall create a private right of action under this chapter" (36 U.S.C. § 220505(b)(9)).

Because there was no contractually or statutorily mandated procedure, the court had no basis to send my claims to arbitration. At the same time, I could easily cure any pleading issue or supply record citations, so dismissal with prejudice was not warranted under Rule 12(b)(6).

Because the defendants did not even claim an available process, the Report's recommendation treats a nonexistent procedure as if it were mandatory. At a minimum, the proper remedy would have been to stay the case pending arbitration or to give me leave to amend. Instead, the Report recommends a final, prejudicial dismissal that seeks to shut me out of court forever despite the absence of any process to which I could avail myself of to be able to submit my dispute.

**Conclusion**

Because no arbitration or grievance procedure was required or available, and because dismissal with prejudice is only appropriate for incurable pleading defects, the Magistrate judge erred in recommending that my entire action be dismissed with prejudice. The District Judge should instead deny dismissal or, in the alternative, grant a stay pending any future process and leave to amend if necessary.

**Objection Four: The Report Misapplies Rule 12(b)(6) by Demanding More Than a Plausible Section 1981 Claim**

**Issue**

Whether the Magistrate Judge correctly held that Plaintiff's Second Amended Complaint fails to state a plausible claim for race discrimination and retaliation under 42 U.S.C. § 1981, thereby recommending dismissal without prejudice for these federal civil rights claims.

**Rule**

A complaint survives a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) if its factual allegations, taken as true, "raise a right to relief above the speculative level" and are "plausible on its face" (Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). This plausibility standard "is not simply a probability requirement," but imposes a standard higher than "a sheer possibility that a defendant has acted unlawfully".

For a Section 1981 discrimination claim, a plaintiff must allege (1) membership in a protected class, (2) an adverse action, and (3) a causal connection between race and the adverse action. A Section 1981 retaliation claim likewise requires protected activity and a materially adverse action causally related to that activity. Unlike claims under Title VII of the Texas Commission on Human Rights Act (TCHRA), which primarily focus on employment relationships, Section 1981 broadly prohibits racial discrimination in the making and enforcement of contracts. Critically, the Ted Stevens Olympic and

Amateur Sports Act ("the Act") does not preempt federal civil rights claims, including those brought under Section 1981.

**Application**

Plaintiff's Second Amended Complaint (SAC) meets and exceeds these pleading standards for both race discrimination and retaliation under Section 1981, rendering the Magistrate Judge's recommendation of dismissal (even without prejudice) and implicit demand for "further factual development" at the pleading stage incorrect.

1. Protected Class: Plaintiff Justin X. Hale is Black, which Section 1981 protects .

2. **Protected Activity:** I engaged in protected activity by working a National Collegiate Rugby championship and by repeatedly complaining of race-based exclusion. (SAC ¶¶ 34–41)

3. **Adverse Actions:** Defendants blocked me from paid assignments—including the 2023 CRAA 7s Championship in Houston and the 2024 Club 7s—and removed me from Major League Rugby contracts without any eligibility finding. (SAC ¶¶ 36–40)

4. **Causal Connection:** Defendants admitted their actions were retaliatory. (SAC 39)

5. **Comparator Evidence:** White referees such as Mike Lawrence, Tom Champa, and Alex Hedquist officiated the same college and NCR events without any pushback, while I faced exclusion for identical conduct. (SAC 51)

The Magistrate Judge's insistence on additional "evidence" or "further factual development" at the pleading stage misapplies the Twombly/Iqbal standard and elevates Plaintiff's Section 1981 claims

to a summary-judgment burden. Plaintiff's detailed allegations, supported by specific dates, events, and named individuals, are sufficient to make his claims plausible on their face. The Report's recommendation to dismiss these federal claims, even "without prejudice", implies a pleading deficiency that the Second Amended Complaint has already cured. The Supreme Court's decision in Alexander v. Gardner-Denver Co. (1974) further underscores that claims of racial discrimination under federal civil rights laws are not precluded by arbitration agreements or internal dispute resolution processes, reinforcing that these claims are properly before this Court and not preempted.

**Conclusion**

Because the Second Amended Complaint plausibly pleads all elements of race discrimination and retaliation under Section 1981, and because these federal civil rights claims are not preempted by the Ted Stevens Act, the Magistrate Judge erred in recommending dismissal of these claims. The District Judge should deny the motion to dismiss as to these federal claims and allow discovery to proceed.

**Objection Five: The Report Errs in Dismissing My Defamation and IIED Claims as Preempted and Inadequately Pleaded**

**Issue**

Whether the Magistrate judge correctly recommended dismissal of my defamation and intentional infliction of emotional distress claims as both preempted by the Ted Stevens Act and inadequately pleaded under Rule 12(b)(6).

**Rule**

**Defamation (Texas law):** Requires allegations of (1) a false statement, (2) publication to a third party, (3) fault (at least negligence) as to its truth, and (4) reputational harm. Guthrie v. Evans, 38 S.W.3d 578, 589 (Tex. App.—Houston [1st Dist.] 2000).

**IIED (Texas law):** Requires allegations of (1) extreme and outrageous conduct, (2) intentionally or recklessly committed, and (3) causing the plaintiff severe emotional distress. Twyman v. Twyman, 855 S.W.2d 619, 621 (Tex. 1993).

**Application**

The SAC includes specific, non-speculative facts that satisfy these elements:

1. **Defamation**

- **False Statement:** On March 15, 2024, David Wilkerson told me I would not receive future Major League Rugby contracts "until you speak to Jamie[,]" implying that I was ineligible unless I complied with Mr. McGregor's demands. (SAC 36)

- **Publication:** Those statements were conveyed to Wilkerson and relayed to league organizers. Later during a Zoom call arranged by Marquise Goodwin, Mr. McGregor stated, "He'll put you back on the list if you stop doing major NCR events." (SAC Ex. B)

- **Fault:** Mr. McGregor and USA Rugby knew these statements were false because I maintained my referee certification and no formal eligibility ruling had been made. (SAC ¶¶ 36–40)

  **Harm:** As a result, I lost paid assignments and suffered damage to my professional reputation. (SAC 45)

2. **Intentional Infliction of Emotional Distress**

   - **Extreme and Outrageous Conduct:** SAC 39 describes two recorded threats—to withhold my livelihood unless I abandoned lawful assignments—delivered in calls on May 1, 2023, and March 25, 2024.

   - **Intent or Recklessness:** Those threats were made deliberately in response to my protected activity and race. (SAC ¶¶ 39–41)

   - **Severe Emotional Distress:** SAC 48 details the anxiety, humiliation, and emotional harm I suffered when my certification status was falsely questioned and assignments were withheld.

IIED is a distinct tort that focuses on severe mental anguish. Even if related to the same conduct underlying other claims, Texas law allows IIED to proceed when there are allegations of extreme, intentional wrongdoing that cause serious distress.

3. **Preemption**

These claims arise from false statements and threats directed at me personally. They do not depend on any formal eligibility process or internal governance under the Ted Stevens Act. Therefore they lie entirely outside the Act's narrow scope.

Because each element of defamation and IIED is plainly alleged in the SAC, the Report's blanket conclusion that these claims are "preempted and inadequately pleaded" misapplies both the pleading standard and the statutory preemption analysis.

**Conclusion**

Because my SAC pleads the essential elements of both defamation and intentional infliction of emotional distress and because neither claim is preempted by the Ted Stevens Act, the Magistrate judge erred in recommending their dismissal. The District Judge should allow these tort claims to proceed.

**Objection Six: The Report Errs in Dismissing My Breach of Contract Claim as Inadequately Pleaded and Preempted**

**Issue**

Whether the Magistrate judge correctly concluded that I failed to plead any valid contracts with USA Rugby and that my breach of contract claim is preempted by the Ted Stevens Act.

**Rule**

Under Texas law, a breach of contract claim requires allegations of (1) a valid contract, (2) performance or tendered performance, (3) breach by the defendant, and (4) resulting damages. See Frost Nat'l Bank v. L & F Distrib., Ltd., 165 S.W.3d 310, 312 (Tex. 2005).

**Application**

1. **Valid Contract:**
   - The SAC alleges that USA Rugby recruited and assigned me to officiate matches under its appointment process, creating binding officiating agreements each time I accepted an assignment. (SAC ¶¶ 30–31)
   - It further alleges that I had contracts to officiate Major League Rugby matches and the 2024 Club National 7s Championship, over which Mr. McGregor exercises assignment authority. (SAC 37)

2. **Tendered Performance:**

- I accepted each assignment and made myself fully available. I confirmed with event organizers, arranged travel at my own expense, and stood ready to officiate on the scheduled dates.

- On March 15, 2024, Major League Rugby's manager informed me that no further contracts would be issued "until you speak to Jamie." (SAC 36)

- Later in a Zoom call witnessed by Marquise Goodwin, Jamie McGregor confirmed that he was blocking my contracts because of my participation in those events. (SAC 39).

- These facts establish that I was willing and able to perform, but was prevented from doing so.

3. **Breach:**

- Defendants' directive to force the breach of my pre-existing agreement, and to withhold my contractual rights and assignments - without any formal eligibility finding constitutes a breach of those officiating agreements. (SAC ¶¶ 36–40)

4. **Damages:**

- I lost match fees and suffered reputational harm among refereeing peers as a direct result. (SAC 45).

These allegations adequately plead each element of breach of contract. The Magistrate's suggestion that I did not plead any contracts misreads the SAC's detailed references to assignment agreements.

5. **Preemption:**

- ○ As with my other state-law claims, this contract dispute falls outside the Ted Stevens Act's narrow eligibility-governance framework.

- ○ Congress expressly carved out college and club competitions from eligibility review (36 U.S.C. § 220523(a)(5)) and preserved state-law duties (36 U.S.C. § 220524(b)).

- ○ My claim arises from withholding my officiating assignments—not from any formal finding of ineligibility—so it is not preempted.

**Conclusion**

Because the SAC alleges valid officiating contracts, my performance, Defendants' intentional breach, and resulting damages and because the Ted Stevens Act does not preempt such contractual disputes the Magistrate judge erred in recommending dismissal of my breach of contract claim. The District Judge should allow this claim to proceed.

## CERTIFICATE OF SERVICE

I certify that on  Jul 10, 2025 , I electronically filed the foregoing with the Clerk of the Court using the Electronic Submission For Pro Se Filers, and e-mailed a copy of the foregoing on  Jul 10, 2025  to:

Philip Robert Brinson
1900 West Loop South, Suite 1000
Houston, Texas 77027
prbrinson@grsm.com

Date:  Jul 10, 2025

/s/ Justin X. Hale
Justin X. Hale
2904 Sprouted Grain
Seguin, TX
(979) 703-0894
justinxhale@gmail.com