# EXHIBIT A

Authentisign ID: 1A5AEE34-D45D-F011-8F7C-000D3A8A9962

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| CHRISTOPHER CHOPRA MICHELETTI | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | CASE NO. 1:25-CV00245 RP |
| | § | |
| JAMIE MCGREGOR, DIRECTOR OF | § | |
| TRAINING & EDUCATION USA RUGBY | § | |
| AND | § | |
| USA RUGBY | § | |
| Defendants. | § | |

CHRISTOPHER CHOPRA MICHELETTI'S OBJECTIONS TO THE
REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

Now Into Court, comes Plaintiff, Christopher Chopra Micheletti, and, pursuant to

F.R.C.P. Rule 72, files its Objections to the Magistrate Judge's Report and Recommendations

(hereinafter referred to as the "Report").

**Introduction and Summary**

This case is about retaliation, country of origin discrimination, and defamation—not

eligibility. I bring my claims under the Canadian Civil Rights Act and Texas tort law. (See R&R at

4, 6–10, Dkt 32.) I remained certified and continued to receive and tender officiating assignments

until Major League Rugby contracts were abruptly withheld in March 2024. The magistrate judge

nevertheless treated my state-law and civil-rights claims as if they were challenges to eligibility and

1

Authentisign ID: 1A5AEE34-D45D-F011-8F7C-000D3A8A9962

recommended their dismissal under the Ted Stevens Act. That conclusion overlooks both the text of the statute and the facts in the record.

The Report relies on the Act's Olympic eligibility provisions. However, the matches that triggered the retaliation were domestic college competitions. Congress specifically removed those events from a national governing body's eligibility authority by stating that this power does not extend to "amateur athletic competition specified in section 220526." The statute also provides that "nothing in this section shall be construed to preempt or otherwise abrogate the duty of care of a national governing body under State law or the common law."

I attempted every available internal channel but was rebuffed at every step. My Complaint explains that Mr. McGregor and USA Rugby blocked me from paid assignments because I worked a National Collegiate Rugby championship and because of my country of origin. I spoke with Nathan Abdelnour, the Rugby Canada's High Performance Referee Manager, who told me in early 2024 that I would continue to lose assignments unless I stopped refereeing NCR events. No one offered any internal remedy.

Because the statute preserves state-law duties, carves out the competitions at issue, and provides no compulsory internal process, the Report's preemption, exhaustion, and dismissal-with-prejudice analyses all fail. The following specific objections explain why the Ted Stevens Act does not bar my tort and civil-rights claims and why dismissal with prejudice is improper.

2

Authentisign ID: 1A5AEE34-D45D-F011-8F7C-000D3A8A9962

**Objection One: The Report Misapplies the Ted Stevens Act by Treating Personal Civil-Rights and Tort Claims as Eligibility Disputes**

**Issue**

Whether the magistrate judge correctly held that the Ted Stevens Act preempts my retaliation, discrimination, defamation, and tortious-interference claims by categorizing them as eligibility challenges.

**Rule**

The Ted Stevens Act governs only formal Olympic eligibility questions and internal governance under a national governing body's certification or insurance framework. Congress expressly carved out ordinary tort and civil-rights duties, stating, "Nothing in this section shall be construed to preempt or otherwise abrogate the duty of care of a national governing body under State law or the common law" (36 U.S.C. § 220524(b)). In addition, the Act limits eligibility authority "except for amateur athletic competition specified in section 220526" (36 U.S.C. § 220523(a)(5)).

**Application**

Plaintiff respectfully submits that the Report's foundational premise, asserting that Plaintiff's claims "center on whether Defendants have complied with the Ted Stevens Act," misapprehends the nature of Plaintiff's action. Plaintiff does not invoke any right under the Ted Stevens Act; rather, Plaintiff asserts that the Act does not apply to his claims, which arise independently under 42 U.S.C. § 1981 and Texas law. The Report appears to categorize Plaintiff's

3

Authentisign ID: 1A5AEE34-D45D-F011-8F7C-000D3A8A9962

state-law and civil-rights claims as challenges to eligibility, thereby treating any dispute involving refereeing as an "eligibility fight". This framing overlooks critical statutory limitations and the actual nature of Plaintiff's allegations. Plaintiff never lost his USA Rugby certification and continued to receive officiating assignments until Major League Rugby (MLR) contracts were abruptly withheld in March 2024. Therefore, this dispute does not challenge Olympic eligibility under the Act but instead challenges how Defendants "selectively blocked" Plaintiff from paid assignments and other opportunities due to "retaliation and origin".

The Ted Stevens Act explicitly limits the authority of National Governing Bodies (NGBs), such as USA Rugby, over certain Olympic competitions. The Report's preemption determination primarily relies on an "eligibility" analysis derived from cases involving participation in the Olympics, which Plaintiff contends is not directly applicable here because Plaintiff's complaint "does not raise any claims regarding Olympic or international eligibility or participation". Instead, the dispute centers on domestic collegiate and professional competitions. Congress made these carve-outs clear in 36 U.S.C. § 220523(a)(5), which states that an NGB "has no authority to establish eligibility procedures for participation" in competitions "except for amateur athletic competitions specified in section 220526 of this title". The events at issue – specifically domestic college competitions (such as the Collegiate Rugby Championships or CRCs, operated by National Collegiate Rugby or NCR) and professional MLR matches – fall squarely within this "exclusive jurisdiction" carve-out. Therefore, Plaintiff submits that USA Rugby lacks authority over eligibility for these specific events under the TSA, which implicates the Report's preemption and jurisdictional analysis as it pertains to these events. Also, the Ted Stevens Act only applies to

4

Authentisign ID: 1A5AEE34-D45D-F011-8F7C-000D3A8A9962

amateur sports and the national governing bodies have no jurisdiction over professional sports leagues such as the MLR.

Furthermore, the Ted Stevens Act includes a crucial "Rule of Construction" that preserves state-law duties. As stated in 36 U.S.C. § 220524(b): "Nothing in this section shall be construed to preempt or otherwise abrogate the duty of care of a national governing body under State law or the common law". A nearly identical limiting language applies to an NGB's "general duties," and a similar rule exists for the USOPC under 36 U.S.C. § 220505(d)(3). This statutory language explicitly preserves state-law duties, directly countering the Report's findings of preemption for Plaintiff's tortious interference, defamation, intentional infliction of emotional distress, and breach of contract claims. Plaintiff's rights under the Canadian Charter of Rights and Freedoms are also not preempted.

Moreover, the "exclusive jurisdiction" argument further supports Plaintiff's position regarding the inapplicability of any exhaustion of internal remedies. If the events giving rise to Plaintiff's claims (domestic college and professional MLR matches) are outside USA Rugby's eligibility authority under the TSA, then the Act's arbitration provisions are, by definition, inapplicable to disputes stemming from these events. It is important to note that sections 220523 (NGB authority) and 220526 (exclusive jurisdiction) are not included in the list of TSA sections under 220527 that can be filed as a complaint against a national governing body. This statutory omission suggests that there is no administrative avenue under the Act for these specific violations, thereby indicating that judicial review is the appropriate path. This further supports Plaintiff's argument that any exhaustion requirement would be futile due to the insufficient or unavailable internal processes.

5

Authentisign ID: 1A5AEE34-D45D-F011-8F7C-000D3A8A9962

**Conclusion**

Because the Act does not govern personal harms, and because it expressly preserves ordinary tort and civil-rights duties while carving out the specific competitions involved here, the magistrate judge erred in recommending dismissal of these claims under the Ted Stevens Act.

**Objection Two: No Meaningful Internal Remedy Existed**

**Issue**

Whether the magistrate judge correctly held that I was required to exhaust an internal grievance or arbitration process under the Ted Stevens Act before bringing my state-law and civil-rights claims.

**Rule**

Exhaustion under the Act requires (1) a clear, accessible internal procedure and (2) that the dispute actually falls within the Act's eligibility or governance framework.

**Application**

Plaintiff respectfully submits that the Report erred in concluding that he was required to exhaust an internal grievance or arbitration process under the Ted Stevens Act ("the Act") for his claims. This conclusion appears to overlook critical statutory limitations of the Act and the demonstrable futility of available internal processes.

First, as elaborated in Objection One, Plaintiff's claims do not arise under the Ted Stevens Act, nor do they concern Olympic or international eligibility or participation. Moreover, the Act

6

Authentisign ID: 1A5AEE34-D45D-F011-8F7C-000D3A8A9962

expressly preserves ordinary tort and civil-rights duties, stating that nothing in its sections should be "construed to preempt or otherwise abrogate the duty of care of a national governing body under State law or the common law" (36 U.S.C. § 220524(b)). Instead, the dispute centers on domestic collegiate and professional competitions, over which USA Rugby (USAR) lacks authority to establish eligibility procedures under 36 U.S.C. § 220523(a)(5), which carves out competitions specified in section 220526. If the events giving rise to Plaintiff's claims are outside USA Rugby's eligibility authority under the Act, then the Act's arbitration provisions are, by definition, inapplicable to disputes stemming from these events. It is important to note that sections 220523 (NGB authority) and 220526 (exclusive jurisdiction) are not included in the list of Act sections under 220527 that can be filed as a complaint against a national governing body. This statutory omission strongly suggests that no administrative avenue exists under the Act for these specific violations, indicating that judicial review is the appropriate path.

Additionally, the internal process itself presented a fundamental conflict of interest, as Mr. McGregor, the individual alleged to have engaged in discriminatory and retaliatory conduct, was also the person responsible for enforcing USA Rugby's policies. Directing Plaintiff to report concerns to the alleged wrongdoer undermines the adequacy of any internal process and exposes the complainant to potential further retaliation.

Therefore, because the Act's arbitration provisions are inapplicable to the nature of Plaintiff's claims and because Plaintiff demonstrated diligent but futile attempts to seek internal resolution through non-existent or inadequate processes, no exhaustion requirement should have been imposed.

7

Authentisign ID: 1A5AEE34-D45D-F011-8F7C-000D3A8A9962

**Conclusion**

Because no clear or working grievance or arbitration process was available, and because the Act does not apply to the specific competitions at issue or the nature of Plaintiff's claims, the Report erred in finding that Plaintiff was required to exhaust the Act's procedures before proceeding in federal court.

**Objection Three: Dismissal With Prejudice Was Improper When No Arbitration or Grievance Process Existed**

**Issue**

Whether the magistrate judge correctly recommended dismissal of my claims with prejudice rather than staying the case or permitting me to proceed, even though no arbitration or grievance process was available under the Ted Stevens Act (R&R at 9).

**Rule**

When a court finds that arbitration or an internal grievance process may apply, it should stay the case under 9 U.S.C. § 3 rather than dismissing with prejudice. Even under Federal Rule of Civil Procedure 12(b)(6), dismissal with prejudice is reserved for claims that are incurable or where amendment would be futile.

**Application**

No arbitration clause or workable grievance channel ever existed for my claims. Neither USA Rugby's Motion to Dismiss (Dkt 10) nor Mr. McGregor's Motion to Dismiss (Dkt 9)

8

Authentisign ID: 1A5AEE34-D45D-F011-8F7C-000D3A8A9962

proposes any such internal process, which confirms none exists (see R&R at 9). Defendants also do not invoke any binding arbitration provision in the Ted Stevens Act—nor could they, since "neither this paragraph nor any other provision of [the Act] shall create a private right of action under this chapter" (36 U.S.C. § 220505(b)(9)).

Because there was no contractually or statutorily mandated procedure, the court had no basis to send my claims to arbitration. At the same time, I could easily cure any pleading issue or supply record citations, so dismissal with prejudice was not warranted under Rule 12(b)(6).

Because the defendants did not even claim an available process, the Report's recommendation treats a nonexistent procedure as if it were mandatory. At a minimum, the proper remedy would have been to stay the case pending arbitration or to give me leave to amend. Instead, the Report recommends a final, prejudicial dismissal that shuts me out of court forever despite the absence of any process to which I could submit my dispute.

**Conclusion**

Because no arbitration or grievance procedure was required or available, and because dismissal with prejudice is only appropriate for incurable pleading defects, the magistrate judge erred in recommending that my entire action be dismissed with prejudice. The District Judge should instead deny dismissal or, in the alternative, grant a stay pending any future process and leave to amend if necessary.

Authentisign ID: 1A5AEE34-D45D-F011-8F7C-000D3A8A9962

**Objection Four: The Report Misapplies Rule 12(b)(6) by Demanding More Than a Plausible National Origin Discrimination Claim**

**Issue**

Whether the Magistrate Judge correctly held that Plaintiff's Complaint fails to state a plausible claim for national origin discrimination, thereby recommending dismissal without prejudice of Plaintiff's civil rights claims.

**Rule**

To survive dismissal under Rule 12(b)(6), a complaint must contain factual allegations sufficient to state a claim that is plausible on its face (*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A plaintiff must allege:

1. Membership in a protected class (e.g., national origin),
2. An adverse action, and
3. A causal connection between the two.

While Title VII of the Civil Rights Act of 1964 prohibits discrimination based on national origin, international principles such as those embedded in the Canadian Human Rights Act (CHRA) further reinforce the illegality of such treatment. The CHRA prohibits differential treatment based on "national or ethnic origin" in employment, contracting, and services (RSC 1985, c H-6, s 3(1)). Canadian law iapplies particularly when the discrimination in question affects a Canadian citizen operating in transnational spaces.

10

Authentisign ID: 1A5AEE34-D45D-F011-8F7C-000D3A8A9962

**Application**

Plaintiff is a Canadian citizen who was denied access to officiating opportunities by Defendants based specifically on his country of origin, even though American referees were not similarly penalized for engaging in the same conduct.

1. **Protected Class**: Plaintiff is a Canadian national, placing him squarely within the protected category of "national origin."

2. **Adverse Actions**: Plaintiff was removed from Major League Rugby (MLR) officiating assignments and denied future contracts without any formal ineligibility ruling or certification issue. (Complaint ¶¶ 36–40)

3. **Causal Connection to National Origin**:
   - Plaintiff explicitly alleges that American referees who participated in NCR events were not blocked from MLR appointments, while he, a Canadian, was excluded for identical conduct. (Complaint ¶ 46)
   - In early 2024, Rugby Canada's High Performance Referee Manager, Nathan Abdelnour, warned Plaintiff that continued participation in NCR events would result in lost assignments—further demonstrating the nationality-based exclusion. (Complaint ¶ 39)
   - No neutral eligibility rule was cited, and Plaintiff retained all formal certification and was actively officiating matches during this time.

4. **Plausibility and Specificity**: Plaintiff identifies specific dates, individuals (e.g., Abdelnour, Wilkerson, McGregor), events (e.g., 2024 MLR), and comparators (e.g.,

Authentisign ID: 1A5AEE34-D45D-F011-8F7C-000D3A8A9962

American referees not excluded). This goes well beyond general accusations and clearly satisfies the Twombly/Iqbal pleading threshold.

5. **Non-Preemption under the Ted Stevens Act**:

   o The events at issue involve domestic college and professional competitions, not international Olympic eligibility. Thus, the Ted Stevens Act does not apply.

   o Congress expressly carved out competitions like NCR and MLR from a national governing body's eligibility authority (36 U.S.C. § 220523(a)(5)).

   o The Act also preserves state and common-law duties (36 U.S.C. § 220524(b)), including the duty not to discriminate.

6. **International Human Rights Context**:

   o The Canadian Human Rights Act reinforces the impropriety of national origin-based exclusion in employment-related settings.

   o U.S. courts have long considered international human rights standards persuasive in civil rights contexts, particularly where transnational discrimination may interfere with equal access to employment opportunities.

   o Defendants cross border actions involves the violations of the Canadian Human Rights Act

**Conclusion**

The Complaint plausibly alleges that Plaintiff was treated less favorably than similarly situated U.S.-based referees due solely to his Canadian national origin. That is a textbook example of unlawful discrimination under U.S., Canadian and international civil rights frameworks. The Magistrate Judge's recommendation to dismiss this claim misapplies Rule 12(b)(6) and overlooks

Authentisign ID: 1A5AEE34-D45D-F011-8F7C-000D3A8A9962

both the factual specificity and legal viability of Plaintiff's national origin discrimination theory.

This claim should be allowed to proceed to discovery and/or allowed to file an amended complaint.

**Objection Five: The Report Errs in Dismissing My Defamation and IIED Claims as Preempted and Inadequately Pleaded**

**Issue**

Whether the magistrate judge correctly recommended dismissal of my defamation and intentional infliction of emotional distress claims as both preempted by the Ted Stevens Act and inadequately pleaded under Rule 12(b)(6).

**Rule**

**Defamation (Texas law):** Requires allegations of (1) a false statement, (2) publication to a third party, (3) fault (at least negligence) as to its truth, and (4) reputational harm. Guthrie v. Evans, 38 S.W.3d 578, 589 (Tex. App.—Houston [1st Dist.] 2000).

**IIED (Texas law):** Requires allegations of (1) extreme and outrageous conduct, (2) intentionally or recklessly committed, and (3) causing the plaintiff severe emotional distress. Twyman v. Twyman, 855 S.W.2d 619, 621 (Tex. 1993).

**Application**

The Complaint includes specific, non-speculative facts that satisfy these elements:

13

Authentisign ID: 1A5AEE34-D45D-F011-8F7C-000D3A8A9962

1. **Defamation**

   - **False Statement:** On March 15, 2024, David Wilkerson told me I would not receive future Major League Rugby contracts "I cannot use any match official of any capacity who is involved in NCR" implying that I was ineligible unless I complied with Mr. McGregor's demands. (Complaint Ex. J)

   - **Publication:** Those statements were conveyed to Wilkerson and relayed to league organizers. Later in an e-mail from Mr Abdelnour I was told, "these events (NCR) could have an effect on their eligibility to be selected to Rugby Canada's national events, be part of Rugby Canada's High Performance officiating pathway, and nominations to any national or international competitions." (Complaint Ex. N)

   - **Fault:** Mr. McGregor and USA Rugby knew these statements were false because I maintained my referee certification and no formal eligibility ruling had been made. **Harm:** As a result, I lost paid assignments and suffered damage to my professional reputation. (Complaint ¶ 39)

2. **Intentional Infliction of Emotional Distress**

   - **Extreme and Outrageous Conduct:** Complaint ¶¶ 117-121 describes actions—to withhold my livelihood unless I abandoned lawful assignments—delivered in e-mails.

   - **Intent or Recklessness:** Those threats were made deliberately in response to my protected activity and origin. (Complaint ¶¶ 122 & 124)

14

Authentisign ID: 1A5AEE34-D45D-F011-8F7C-000D3A8A9962

- **Severe Emotional Distress:** Complaint ¶¶ 125-129 details the anxiety, humiliation, and emotional harm I suffered when my certification status was falsely questioned and assignments were withheld.

IIED is a distinct tort that focuses on severe mental anguish. Even if related to the same conduct underlying other claims, Texas law allows IIED to proceed when there are allegations of extreme, intentional wrongdoing that cause serious distress.

3. **Preemption**

These claims arise from false statements and threats directed at me personally. They do not depend on any formal eligibility process or internal governance under the Ted Stevens Act. Therefore they lie entirely outside the Act's narrow scope.

Because each element of defamation and IIED is plainly alleged in the Complaint, the Report's blanket conclusion that these claims are "preempted and inadequately pleaded" misapplies both the pleading standard and the statutory preemption analysis.

**Conclusion**

Because my Complaint pleads the essential elements of both defamation and intentional infliction of emotional distress and because neither claim is preempted by the Ted Stevens Act, the magistrate judge erred in recommending their dismissal. The District Judge should allow these tort claims to proceed.

Authentisign ID: 1A5AEE34-D45D-F011-8F7C-000D3A8A9962

**Objection Six: The Report Errs in Dismissing My Breach of Contract Claim as Inadequately Pleaded and Preempted**

**Issue**

Whether the magistrate judge correctly concluded that I failed to plead any valid contracts with USA Rugby and that my breach of contract claim is preempted by the Ted Stevens Act.

**Rule**

Under Texas law, a breach of contract claim requires allegations of (1) a valid contract, (2) performance or tendered performance, (3) breach by the defendant, and (4) resulting damages. See Frost Nat'l Bank v. L & F Distrib., Ltd., 165 S.W.3d 310, 312 (Tex. 2005).

**Application**

1. **Valid Contract:**

   o The Complaint alleges that Major League Rugby recruited and assigned me to officiate matches under its appointment process, creating binding officiating agreements each time I accepted an assignment. (Complaint ¶ 32-37)

2. **Tendered Performance:**

   o I accepted each assignment and made myself fully available. I confirmed with event organizers, arranged travel, and stood ready to officiate on the scheduled dates.

16

Authentisign ID: 1A5AEE34-D45D-F011-8F7C-000D3A8A9962

- On March 19, 2024, Major League Rugby's manager informed me that no further contracts would be issued due to my participation in NCR events. (Complaint ¶ 39)
- These facts establish that I was willing and able to perform, but was prevented from doing so.

3. **Breach:**
   - Defendants' directive to withhold my contracts and assignments—without any formal eligibility finding—constitutes a breach of those officiating agreements. (Complaint ¶¶ 39-41)

4. **Damages:**
   - I lost match fees and suffered reputational harm among refereeing peers as a direct result. (Complaint ¶ 44).

These allegations adequately plead each element of breach of contract. The magistrate's suggestion that I did not plead any contracts misreads the Complaint's detailed references to assignment agreements.

5. **Preemption:**
   - As with my other state-law claims, this contract dispute falls outside the Ted Stevens Act's narrow eligibility-governance framework.
   - Congress expressly carved out college and club competitions from eligibility review (36 U.S.C. § 220523(a)(5)) and preserved state-law duties (36 U.S.C. § 220524(b)).

Authentisign ID: 1A5AEE34-D45D-F011-8F7C-000D3A8A9962

- ○ My claim arises from withholding my officiating assignments—not from any formal finding of ineligibility—so it is not preempted.

**Conclusion**

Because the Complaint alleges valid officiating contracts, my performance, Defendants' intentional breach, and resulting damages and because the Ted Stevens Act does not preempt such contractual disputes the magistrate judge erred in recommending dismissal of my breach of contract claim. The District Judge should allow this claim to proceed.

18

Authentisign ID: 1A5AEE34-D45D-F011-8F7C-000D3A8A9962

## CERTIFICATE OF SERVICE

I certify that on July 10, 2025, I electronically filed the foregoing with the Clerk of the Court using PACER, and as such an electronic copy was sent to:

Philip Robert Brinson
1900 West Loop South, Suite 1000
Houston, Texas 77027
prbrinson@grsm.com

*Christopher Chopra Micheletti*

Christopher Chopra Micheletti
60 Ave De Breslay
Pointe-Claire, QC, Canada
(514)-777-1535
c.c.micheletti@outlook.com

19