# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### AUSTIN DIVISION

| | | |
|---|---|---|
| JUSTIN X. HALE, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | A-24-CV-1076-RP |
| | § | |
| JAMIE MCGREGOR and USA RUGBY, | § | |
| Defendants. | § | |

## REPORT AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

TO THE HONORABLE ROBERT PITMAN
UNITED STATES DISTRICT JUDGE:

Before the court are Defendants Jamie McGregor and USA Rugby's (collectively, "Defendants") Second Motion to Dismiss (Dkt. 41, Mot.), Plaintiff Justin X. Hale's Response (Dkt. 46, Resp.), and Defendants' Reply (Dkt. 48, Rep.).[1] After considering the briefing and applicable law, the undersigned recommends the following to the District Judge.

## I. BACKGROUND[2]

Plaintiff Justin X. Hale brings this case against Defendants USA Rugby and Jamie McGregor ("McGregor"), the Director of Training & Education at USA Rugby's National Office. Hale originally brought a variety of federal and state law claims, including tortious interference, retaliation, defamation, breach of contract, violation of the Ted Stevens Act, discrimination, intentional infliction of emotional distress, and disparate treatment based on race. Dkt. 3 ("FAC"). Defendants separately moved to dismiss the claims brought against them. Dkt. 6 (McGregor

---

[1] United States District Judge Robert Pitman referred this motion to the undersigned for report and recommendation pursuant to 28 U.S.C. § 636(b)(1), Rule 72 of the Federal Rules of Civil Procedure, and Rule 1 of Appendix C of the Local Rules of the United States District Court for the Western District of Texas. *See* Text Order dated Apr. 21, 2026.

[2] At this stage, all well-pleaded facts are taken as true.

MTD); Dkt. 7 (USA Rugby MTD). Hale responded to the motions and also moved for leave to file a second amended complaint. Dkts. 13, 14, 15. The undersigned recommended that the District Judge dismiss Hale's state-law claims with prejudice and dismiss Hale's federal claims without prejudice; found that the Ted Stevens Act does not provide a private right of action; and granted Hale's motion for leave to amend in part, such that he may replead his federal claims. Dkt. 32 (R&R). Following the undersigned's report and recommendation, Hale filed a Second Amended Complaint that included several state-law claims. Subsequently, the District Judge adopted the undersigned's recommendations, struck Hale's Second Amended Complaint, and gave Hale another opportunity to file an amended complaint that only included his federal claims (other than the Ted Stevens Act claim), such as his claims for retaliation, association discrimination, and race discrimination. Dkt. 39 at 4.

On August 18, 2025, Hale filed a Third Amended Complaint ("TAC"). Dkt. 40 (TAC). In his TAC, Hale alleges that he is Black and a "highly qualified rugby referee" who has worked as an independent contractor with both USA Rugby and National Collegiate Rugby ("NCR"). *Id.* at 2-3, 7, 19. He alleges that, although he was a contractor for USA Rugby, its "level of control . . . goes beyond the bounds of a traditional independent contractor relationship," as it "exercises significant influence over referee appointments, career progression, and professional development." *Id.* at 8.

Hale pleads that NCR and the Collegiate Rugby Association of America ("CRAA"), which is affiliated with USA Rugby, operate as parallel collegiate rugby associations. *Id.* In March 2023, Hale accepted a contract to participate as a referee on May 6, 2023, at a tournament organized by CRAA (i.e., affiliated with USA Rugby). *Id.* Hale then officiated a tournament organized by NCR from April 28-30, 2023. *Id.* One day later, on May 1, 2023, Hale "was informed by phone that his"

appointment at the USA Rugby-affiliated tournament "was canceled because of his" participation in the NCR-affiliated tournament. *Id.* at 9. Hale pleads: "The CRAA terminated Hale's contract based on malicious, and false statements of fact, communicated to them by Defendant Jamie McGregor, acting on behalf of and at the direction of USA Rugby, including disparaging remarks about Hale's personal character and performance as a referee." *Id.* McGregor allegedly told Hale that he was "disqualified from officiating at the [CRAA] tournament due to his participation in the . . . event hosted by [NCR] and not sanctioned by USA Rugby," though there was no "written rule" that participating in NCR events disqualified referees from contracting with USA Rugby. *Id.* at 9-10. McGregor "cited USA Rugby's ongoing 'schism' with NCR as the basis for this exclusion." *Id.* at 9. Hale was also allegedly prevented from officiating matches for Major League Rugby ("MLR"), Rugby Texas, and USA Club Regionals as a result of his participation in NCR-affiliated events. *Id.* at 11, 13. Hale claims that these events "demonstrate[] clear retaliatory intent and a deliberate effort to harm Plaintiff's career" and "highlight[] USA Rugby's inconsistent and racially biased enforcement of its alleged policies." *Id.* at 10.

Hale additionally pleads that "referees of a different race, under similar circumstances, received preferential treatment and faced no career impediments, unlike Plaintiff." *Id.* at 13. He claims that multiple white referees participated in NCR events but "faced no . . . career impediments." *Id.* at 13-14. Another white referee, according to Hale, had publicly criticized USA Rugby but nonetheless continued to contract with USA Rugby. *Id.* at 15. Hale claims these are sufficiently similar comparators to support a plausible inference that USA Rugby's decision to stop contracting with him was influenced by his race. Hale pleads that he "opposed race[-]based exclusion from assignments and asserted his right to equal contracting during a recorded call on May 1, 2023, and again during a Zoom meeting on March 25, 2024," which were protected

activities. *Id.* at 22-23. He asserts that the related adverse actions were his contract for the May 6, 2023 USA Rugby event being canceled; being blocked from contracting with MLR on March 15, 2024; and McGregor confirming on March 25, 2024, that Hale's "complaints and his work with NCR were the reasons he was being blocked from MLR" and other USA Rugby events. *Id.* at 23. Hale claims Defendants "tied contracting decisions to Plaintiff's stance against unequal treatment." *Id.* Finally, Hale alleges that "Defendants used his association with National Collegiate Rugby as a pretext to impair his own contracting opportunities, while similarly situated white referees who also worked NCR events were not penalized, which supports a race[-]based violation" and that Defendants and co-conspirators acted in a conspiracy, motivated by racial animus, to deprive him of the right of equal contracting. *Id.* at 24, 27.

Based on these allegations, Hale asserts several causes of action: race discrimination, association discrimination, and retaliation under 42 U.S.C. § 1981, and conspiracy under 42 U.S.C. § 1985(3). Defendants filed a joint motion to dismiss Hale's TAC under Federal Rule of Civil Procedure 12(b)(6).[3] Dkt. 41 (Mot.). Following an Order to Show Cause by the District Judge, Hale responded, Dkt. 46 (Resp.), and Defendants replied, Dkt. 48 (Rep.).

## II.    LEGAL STANDARD

When evaluating a motion to dismiss for failure to state a claim under Rule 12(b)(6) the complaint must be liberally construed in favor of the plaintiff and all facts pleaded therein must be taken as true. *Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). Although Federal Rule of Civil Procedure 8 mandates only that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief," this standard demands more than unadorned

---

[3] Defendants' Motion addresses Hale's claims for discrimination, retaliation, and association discrimination, but it does not address Hale's claim for conspiracy. *See* Mot.

accusations, "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement." *Bell Atl. v. Twombly*, 550 U.S. 544, 555-57 (2007). Rather, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id*. at 570. The Supreme Court has made clear this plausibility standard is not simply a "probability requirement," but imposes a standard higher than "a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The standard is properly guided by "[t]wo working principles." *Id*. First, although "a court must 'accept as true all of the allegations contained in a complaint,' that tenet is inapplicable to legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. Second, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Thus, in considering a motion to dismiss, the court must initially identify pleadings that are no more than legal conclusions not entitled to the assumption of truth, then assume the veracity of well-pleaded factual allegations and determine whether those allegations plausibly give rise to an entitlement to relief. If not, "the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Id*. In sum, a "plaintiff must plead enough facts to nudge the claims across the line from conceivable to plausible." *Hinojosa v. Livingston*, 807 F.3d 657, 684 (5th Cir. 2015) (internal quotation marks, brackets, and ellipses omitted) (quoting *Iqbal*, 556 U.S. at 680).

When evaluating a motion to dismiss, the court considers "(1) the facts set forth in the complaint, (2) documents attached to the complaint, and (3) matters of which judicial notice may be taken under Federal Rule of Evidence 201." *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d

724, 735 (5th Cir. 2019). The court may also consider "'documents that a defendant attaches to a motion to dismiss. . . if they are referred to in the plaintiff's complaint and are central to her claim.'" *Sligh v. City of Conroe, Texas*, 87 F.4th 290, 297 (5th Cir. 2023) (quoting *Villarreal v. Wells Fargo Bank, N.A.*, 814 F.3d 763, 766 (5th Cir. 2016)).

Finally, the court liberally construes the pleadings of litigants who proceed *pro se*. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). While *pro se* complaints are held to "less stringent standards than formal pleadings drafted by lawyers," *Haines v. Kerner*, 404 U.S. 519, 520 (1972), a plaintiff's *pro se* status offers "no impenetrable shield, for one acting pro se has no license to harass others, clog the judicial machinery with meritless litigation and abuse already overloaded court dockets." *Farguson v. MBank Houston, N.A.*, 808 F.2d 358, 359 (5th Cir. 1986).

## III. ANALYSIS

Hale brings claims under 42 U.S.C. § 1981 and 42 U.S.C. § 1985(3). Section 1981 guarantees that all persons in the United States have the same contractual rights as white citizens. 42 U.S.C. § 1981(a). The statute only applies to race discrimination and race-based retaliation claims. *Bobo v. ITT, Cont'l Baking Co.*, 662 F.2d 340, 344 (5th Cir. 1981). Section 1985 prevents conspiracy to deprive a person of equal rights and privileges under the laws. 42 U.S.C. § 1985(3). The undersigned will address each of Hale's live claims in turn.

### A. Race Discrimination

The following elements must be met for a successful Section 1981 race discrimination claim: "(1) the plaintiff is a member of a racial minority; (2) an intent to discriminate on the basis of race by the defendant; and (3) the discrimination concerns one or more of the activities enumerated in the statute." *Green v. State Bar of Tex.*, 27 F.3d 1083, 1086 (5th Cir. 1994).

With respect to the second element, intentional discrimination, "the plaintiff may establish a *prima facie* case by direct evidence or, more commonly, by circumstantial evidence of discriminatory motive." *Bellows v. Amoco Oil Co.*, 118 F.3d 268, 274 (5th Cir. 1997) (citation modified). Therefore, "an allegation that similarly situated non-minorities received better treatment could create the necessary inference and set the predicate for establishing the section 1981 claim." *Body by Cook, Inc. v. State Farm Mut. Auto. Ins.*, 869 F.3d 381, 386 (5th Cir. 2017) (citation modified). The Fifth Circuit has noted that "scrutinizing whether [a plaintiff's] fellow employees were really 'similarly situated' . . . [is] more suited to the summary judgment phase." *Cicalese v. Univ. of Texas Med. Branch*, 924 F.3d 762, 768 (5th Cir. 2019) (citation omitted). "At this stage of the proceedings, a plaintiff need only plausibly allege facts going to the ultimate elements of the claim to survive a motion to dismiss." *Id.*

Hale alleges that he is Black. Hale also alleges that Defendants removed him from MLR and CRAA contracts without any eligibility finding and continue to block him from further contracts with MLR or USA Rugby. These allegations are sufficient to meet the first and third elements of this cause of action because Hale has alleged he is a member of a protected class and that Defendants are interfering with his rights to make and enforce contracts under Section 1981.

With respect to the second element, Hale alleges that several referees, whom he names, officiated the same NCR and club events as Hale without MLR or USA Rugby interfering with or canceling their contracts. TAC at 20-21. In total, he alleges that six white referees officiated matches at a tournament hosted by NCR in April 2023, i.e., the same NCR event that purportedly led Defendants to cancel Hale's contract with USA Rugby. *Id.* ¶ 49. The following weekend, one of those referees officiated the USA Rugby event on May 6, 2023, i.e., the event for which Defendants canceled Hale's contract. *Id.* The following year, the other five referees contracted

with MLR to officiate matches. *Id.* Hale alleges a seventh white referee also participated in high-profile NCR events and was subsequently granted opportunities to officiate in MLR matches. *Id.* ¶ 50. Finally, Hale alleges an eighth white referee publicly criticized USA Rugby's organizational practices and spoke about his participation in NCR events. *Id.* ¶ 51. This referee not only continued to contract with USA Rugby, but also, he later received a prestigious appointment at that organization. *Id.* Hale alleges that these referees' connections with NCR were public information. *Id.* ¶¶ 50-51. Hale also alleges that the cancelation of current and denial of future contracts were not related to his performance as a referee because his skills were continuously sought during and after Defendants' adverse actions. *Id.* ¶¶ 7-10, 42-44. Defendants argue that Hale failed to sufficiently plead discriminatory intent as he failed to allege his comparators were similarly situated. Mot. at 3. Hale argues he and his named comparators were all peers within the same high-performance structures. Resp. at 3. Defendants further argue Hale failed to plead Defendants were ever made aware of the comparators' participation in NCR events. Rep. at 2-3.

At the pleading stage, the court need not scrutinize whether the fellow employees were really similarly situated. Hale has alleged he is an independent contractor and a referee who contracted with various rugby entities to referee matches for tournaments and scrimmages. He alleges the existence of no fewer than eight other referees who participated in the same or similar events as Hale and describes different jobs these referees obtained throughout 2023 and 2024. Furthermore, Hale alleges that he was in a "distinguished pool of approximately 40 referees" nationally and argues that these peers are within the same high-performance structures. Due to the quantity of individuals, the variety of events each referee contracted to work at, and Hale's allegations regarding his own expertise and competency, the undersigned finds that Hale has plausibly alleged these referees were similarly situated to him. Likewise, Hale has plausibly

alleged these referees received better treatment from USA Rugby and MLR by continuing to be allowed to work for those entities after they officiated matches for NCR. Hale also plausibly alleged Defendants were aware of the comparators' connections with NCR by alleging NCR's tournaments were widely publicized or streamed and one comparator made public statements disparaging USA Rugby's organizational structures.

Additionally, Hale alleges that Nick Ricono, the USA Rugby 7s Manager, expressed no objections to Hale officiating scrimmage matches in 2024 for 7s scrimmages. *Id.* ¶ 42. However, later that year, Ricono informed Hale that he would not receive a contract from USA Rugby to referee at Club National 7s 2024 "due to [Hale's] lack of complying with management directive." *Id.* ¶ 43. Hale further alleges Ricono did not agree with McGregor's directive blocking Hale from further contracts with USA Rugby and their affiliates. *Id.* These allegations provide additional circumstantial evidence of discriminatory motive because Ricono's tacit approval of Hale's abilities as a referee implies the lack of a good faith basis on Defendants' part for excluding Hale from contracts with USA Rugby and MLR. Altogether, Ricono's approval of Hale coupled with Hale's comparator allegations are sufficient to plausibly allege discriminatory intent on Defendants' part. Accordingly, the undersigned finds that Hale has plausibly stated a claim for race discrimination under Section 1981 and recommends the District Judge deny Defendants' motion to dismiss as to this claim.

### B. Retaliation

To bring a retaliation claim in the Fifth Circuit, a plaintiff has the initial burden to set forth a prima facie case of retaliation, which requires the plaintiff to plead that "(1) he engaged in an activity protected by Title VII; (2) he was subjected to an adverse employment action; and (3) that a causal link exists between the protected activity and the adverse employment action." *Johnson*

*v. PRIDE Indus., Inc.*, 7 F.4th 392, 407-08 (5th Cir. 2021) (quoting *Davis v. Dallas Area Rapid Transit*, 383 F.3d 309, 319 (5th Cir. 2004)). The Supreme Court has stated that to prevail on a claim for racial discrimination under § 1981, "a plaintiff must initially plead and ultimately prove that, but for [his] race, [he] would not have suffered the loss of legally protected right." *Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 589 U.S. 327, 340 (2020).

Hale alleges that he "opposed race[-]based exclusion from assignments and asserted his right to equal contracting during a recorded call on May 1, 2023 and again during a Zoom meeting on March 25, 2024." TAC at 22-23. He alleges the following adverse actions occurred: (1) on May 1, 2023, "Plaintiff's 2023 CRAA 7s Championship assignment in Houston was cancelled without any eligibility finding," (2) on March 15, 2024, MLR's head referee manager told Hale there would be no further contracts with MLR "until you [Hale] speak to Jamie [McGregor]," and (3) on March 25, 2024, McGregor confirmed Hale was blocked from MLR and Club National 7s Championship because of NCR work. *Id.* at 23. Hale alleges that Defendants withheld MLR contracts and removed him from Club 7s due to Hale's stance against unequal treatment. *Id.* Defendants argue Hale failed to allege he engaged in a protected activity prior to suffering any adverse employment action and that Hale did not assert that his exclusion was race-based. Mot. at 6. Hale argues Defendants are misinterpreting the timeline and that protected activity does not require explicit accusations of racism. Resp. at 4-5.

In order to engage in a protected activity under Section 1981, a plaintiff must oppose a practice made unlawful by Section 1981. *Coleman v. Bank of Am., N.A.*, No. 3:16-CV-1439-G, 2017 WL 3334104, at *6 (N.D. Tex. Aug. 4, 2017), *aff'd*, 720 F. App'x 724 (5th Cir. 2018). Section 1981 makes it unlawful to discriminate on the basis of race when making and enforcing contracts. 42 U.S.C. § 1981. Thus, to oppose a practice made unlawful by Section 1981, Hale must

oppose discrimination on the basis of race. Hale alleges that he opposed race-based exclusion and asserted his right to equal contracting on the May 1, 2023 phone call with McGregor; however, when Defendants assert Hale, by his own transcript, never mentioned race-based exclusion or discrimination, Hale only argues that Section 1981 "does not require a plaintiff to utter the words 'this is race discrimination.'" Resp. at 5. Likewise, Hale alleges he opposed race-based exclusion during a Zoom meeting with McGregor on March 25, 2024, yet Hale's allegations solely demonstrate his opposition to USA Rugby's policy of exclusion based on participation in NCR events. TAC ¶¶ 37-39. Therefore, Hale has alleged no facts to support that he engaged in protected activity by opposing racial discrimination during the May 1, 2023 phone call or the March 25, 2024 Zoom meeting.

Furthermore, Hale has also failed to plausibly allege a causal link between his activity and the retaliation. "[T]o establish the causation prong of a retaliation claim, the employee should demonstrate that the employer knew about the employee's protected activity. . . . If an employer is unaware of an employee's protected conduct at the time of the adverse employment action, the employer plainly could not have retaliated against the employee based on that conduct." *Manning v. Chevron Chem. Co., LLC,* 332 F.3d 874, 883 (5th Cir. 2003). Hale alleged that the phone call between Hale and McGregor on May 1, 2023, included both the first adverse employment action against Hale and Hale's first alleged instance of protected activity under Section 1981.[4] Importantly, Hale alleges McGregor called Hale with the news that Hale will no longer referee for the CRA tournament that weekend. TAC ¶ 29; *id.* at 40, Ex. B (May 1 Transcript). Thus, even if Hale had successfully alleged he engaged in protected activity under Section 1981, the original

---

[4] Hale alleges that the phone call was recorded and includes the audio recording of that call and a transcription as exhibits to his TAC. *See* TAC, Ex. B (May 1 Transcript); Ex. P (May 1 Audio Recording).

adverse action predates the alleged protected activity. Therefore, Hale has failed to allege his protected activity caused an adverse action.

The undersigned finds Hale has failed to allege two elements of his claim for retaliation and thus recommends granting Defendants' Motion as to this claim.

### C. Association Discrimination

"This court has recognized that § 1981 and Title VII prohibit discrimination against an employee on the basis of a personal relationship between the employee and a person of a different race." *Floyd v. Amite Cnty. Sch. Dist.*, 581 F.3d 244, 249 (5th Cir. 2009). This claim is referred to as an associational race discrimination claim, and it is "predicated on an employer's racial animus towards an employee because of [his] association with persons of a certain race." *Evans v. E. Texas Fam. Med., PA*, No. 6:22-CV-00374-JDK, 2023 WL 3442241 (E.D. Tex. Apr. 25, 2023), *R. & R. adopted*, No. 6:22-CV-00374-JDK, 2023 WL 3436086 (E.D. Tex. May 12, 2023).

Hale alleges that Defendants discriminated against him by using Hale's association with NCR as a pretext for racial discrimination. TAC at 24. However, an associational race discrimination claim must be premised on a plaintiff's relationship to a person of another race. Hale's argument regarding pretext actually belongs within his personal race discrimination claim. *See Mason v. United Air Lines, Inc.*, 274 F.3d 314, 318 (5th Cir. 2001) ("We apply the *McDonnell Douglas* burden-shifting framework in Title VII and 42 U.S.C. § 1981 cases . . . If the plaintiff makes [a] prima facie showing [of race discrimination], the defendant must respond with some legitimate, non-discriminatory reason for the employment action. If the defendant makes the required showing, the burden of proof *returns to the plaintiff* to demonstrate that the employer's articulated reason was a *pretext for the real, discriminatory reason*.") (emphasis added).

It is a fundamental misunderstanding of associational race discrimination to allege Defendants used Plaintiff's relationship with an association as a pretext for discrimination. Thus, the undersigned concurs with Defendants that this claim does nothing more than reallege Hale's personal race discrimination. The undersigned recommends the District Judge grant Defendants' Motion as to this claim.

### D. Conspiracy

Finally, Defendants' Motion to Dismiss does not analyze or even mention Hale's claim under 42 U.S.C. § 1985(3) for conspiracy to interfere with civil rights. Defendants do devote a section in their reply to this claim; however, the court need not consider arguments raised in the reply brief. *E.g., Lacher v. West*, 147 F.Supp.2d 538, 540 (N.D. Tex. 2001) (noting that the court "does not consider arguments raised for the first time in a reply brief."). Accordingly, the undersigned neither addresses this claim on the merits, nor does he recommend its dismissal.

### IV. RECOMMENDATIONS

For these reasons, the undersigned **RECOMMENDS** the District Judge **GRANT IN PART and DENY IN PART** Defendants' Second Motion to Dismiss (Dkt. 41).

Specifically, the undersigned **RECOMMENDS** the District Judge **GRANT** Defendants' Motion and **DISMISS WITH PREJUDICE** Plaintiff's claims for retaliation and association discrimination.

The undersigned further **RECOMMENDS** the District Judge **DENY** Defendants' Motion (Dkt. 41) as to Plaintiff's claim for race discrimination under 42 U.S.C. § 1981 and, to the extent Defendants now argue to dismiss it, Plaintiff's claim for conspiracy under 42 U.S.C. § 1985(3).

Finally, to the extent Plaintiff requests leave to amend, or should he in future, the undersigned **RECOMMENDS** the District Judge **DENY** such a request as Plaintiff has already been given multiple opportunities to replead.

Should the District Judge adopt the undersigned's recommendations in full, Plaintiff's race discrimination and conspiracy claims will remain pending against both Defendants, McGregor and USA Rugby.

## V.     OBJECTIONS

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Judge need not consider frivolous, conclusive, or general objections. *See Battles v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the District Judge of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Judge. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140 (1985); *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415 (5th Cir. 1996) (en banc).

SIGNED May 21, 2026.

_____
MARK LANE
UNITED STATES MAGISTRATE JUDGE